**STINNETTE et al. v. MAULDIN et al.**

No. 2876.

Court of Civil Appeals of Texas. Eastland.

March 14, 1952.

First Motion for Rehearing Granted in Part and Overruled in Part June 27, 1952.

Rehearing Denied Sept. 5, 1952.

Lane & Savage, Dallas, for appellants Mrs. J. M. Stinnette, and others.

Robert M. Rowland and S. C. Rowe, Fort Worth, for appellant, Mrs. Leonard M. Levy.

Mays & Lea, Dallas, and Turner & Seaberry, Eastland, for appellants Producers Investment Corp., American Liberty Pipeline Co., a corp., and the American Liberty Oil Co., a corp.

A. C. Scurlock, Dallas, for appellees Mrs. Buda Mauldin and H. C. Mauldin.

Lester Whipple, San Antonio, for appellees Fred A. Perrenot, and other.

R. J. Cantrell, Dallas, for appellee Nancy Fritz Moon and husband, A. L. Moon.

Franklin Jones, Marshall, filed a motion to dismiss the appeal on the grounds that the Court of Civil Appeals did not have jurisdiction.

COLLINGS, Justice.

This suit was instituted as a Bill of Review, the object of which was to set aside a judgment rendered in the 101st Judicial District Court of Dallas County, Texas, on September 19, 1936, in Receivership Cause No. 95715E, styled Mrs. Virginia Sanders, et al. v. J. E. Stack, et al. This suit was originally filed in the District Court on January 17, 1939 by H. C. Mauldin and wife, Buda Mauldin, and subsequently various parties who, together with the Mauldins, are appellees herein, filed pleadings setting up claims. Appellees sought in this suit against appellants to recover the title and possession of the ⅞ths working interest in and to a producing 15 acre oil and gas lease in Gregg County, Texas, together with an accounting for all of the production from the lease since it first began to produce oil on September 3, 1931. The accounting phase of the case was severed from the title issues which were tried before a jury on November 1, 1949. Based upon the verdict of the jury, the District Court, on March 4, 1950, rendered judgment

in favor of appellees for title and possession to the oil and gas lease interest in question. From such judgment this appeal is brought.

A former appeal of this case from a judgment of the District Court dismissing the suit is reported in Mauldin v. American Liberty Pipe Line Co., Tex.Civ.App., 185 S.W.2d 158. The statement of the reported case is referred to for the purpose of supplementing the statement of the pleadings and facts of this case, insofar as same are applicable. The pleadings are essentially the same. The pleadings and facts of the instant case are so extended and complicated that it is difficult to confine them to a reasonable length, and since it was held on the prior appeal that appellees were entitled to a trial on the fact issues, we will here deal principally with such issues.

In 1930, Mesdames Virginia Sanders, J. M. Stinnette and George E. Light entered into a verbal agreement to purchase for their joint use and benefit the oil and gas lease here involved; each agreed to pay $50 on the purchase price and it was understood that each was to have an equal proportional interest in the lease; Mrs. Sanders was to negotiate the transaction, pay the purchase price and take the title in her own name as a matter of convenience and after the completion of the transaction, the other two were to pay their part of the consideration. In compliance with the agreement, Mrs. Sanders took title to the lease in her own name and paid the consideration therefor. At the time of the purchase the lease was in nonproducing oil territory.

On April 17, 1931, Mrs. Virginia Sanders, joined by her husband, J. A. Sanders, entered into the following written agreement with F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin who had no notice of the interest of Mrs. Stinnette and Mrs. Light therein, for the development of the leasehold for oil and gas:

"State of Texas

County of Gregg

"This Instrument Evidences:

"That F. A. Perrenot, and H. C. Mauldin, and wife, Buda Mauldin, hereinafter called party of the first part, of Bexar County, Texas, and Mrs. Virginia Sanders, joined by her husband, J. A. Sanders, hereinafter called parties of the second part, of Dallas County, Texas, have contracted and agreed with each other as follows:

"1. Party of the second part represent that they are the owners of the mineral estate, including oil and gas thereon, within, upon and under that certain piece, parcel or tract of fifteen (15) acres of land, more or less, being described by metes and bounds as follows:

"A part of a section of one hundred seventy (170) acres out of said survey, as described in an oil and gas lease from J. B. Doby and wife, and R. W. Calloway and wife to W. W. Lechner, which lease is recorded in Vol. 62, pages 49–51, in the Deed Records, of Gregg County, Texas, the part of said one hundred seventy (170) acre tract affected hereby being the north fifteen (15) acres of the north seventeen and one-half (17½) acres of the West twenty-seven and one-half (27½) acres of the East one-half of the above described one hundred seventy (170) acre tract.

"2. The first party being desirous of obtaining the title to said lease, the second parties agree to convey it to him upon the following terms and conditions:

"The first party may enter into possession thereof and they hereby contract and agree to drill a well for oil on said land, designated herein as 'first well,' at such point thereon as may be selected by party of the first part, to the Woodbine sand, unless oil is found thereby at a shallower depth, and to that end to have a derrick thereon within thirty (30) days from date hereof, and to begin drilling operations thereon within sixty (60) days from this date, same to be so done without cost or expense to parties of the second part; performance of these terms are conditions precedent to any liability of the second parties.

"3. Upon the completion of such 'first well,' and in the event oil and gas or either is produced therefrom in paying quantities, and when and as same or either is sold, first party agrees to pay to second party the sum of $15,000.-00 out of one-fourth of the first proceeds thereof, as such proceeds accumulate and to authorize the purchaser or purchasers of such oil or gas to pay such sums directly to the second party, and the balance of such proceeds, or so much thereof, as may be required by party of the first part, shall be and remain available to, and shall be payable to or on the order of, party of the first part for the purpose of and in the drilling of other well or wells on said land by or under the supervision of party of the first part, and party of the first part shall have the right to drill other well or wells on said land to the extent expedient and authorized by law, and therein to use and expend so much of said balance of such proceeds as may be proper and necessary. When and as and to the extent said balance of such proceeds or any part of same is not necessary or required by party of the first part in and for the drilling of such other well or wells, one-half (½) of such excess shall then be paid to party of the first part as further consideration for the purchase hereof.

"4. When said 'first well' has been completed as herein provided, and in the event oil and gas or either is produced therefrom in paying quantities, the title to said mineral estate on said land now owned by party of the second part shall thereupon vest, and same is in that event conveyed by party of the second part to party of the first part, but with the reservation that first party shall in turn pay to second party, a sum equal to one-half of all profits received by him from the operation of said wells, as same are received.

"5. Party of the second part, or either of them, either by themselves or authorized agent or representative, shall at all reasonable times have access to the record memoranda or report of the log of any well or wells drilled hereunder and other books, records and memoranda made or kept by party of the first part concerning or in any way pertaining hereto.

"6. No partnership is formed by the execution of this agreement, the same being intended as a conditional contract for the assignment of the lease mentioned, and it is expressly understood that the second parties retain no right to direct the manner and means, of performance by the first party of the covenant and conditions herein contained.

"Witness our hands in duplicate originals on this the 17th day of April, 1931.

/s/ Henry C. Mauldin
Mrs. Buda Mauldin
F. A. Perrenot
Party of the First Part
Mrs. Virginia Sanders
J. A. Sanders
Parties of the Second Part."

On April 18, 1931, F. A. Perrenot and the Mauldins entered into a written agreement with one J. E. Stack in which they assigned to him the leasehold in question under terms and conditions similar to those provided in the assignment from the Sanders to them, except that Stack agreed to place a derrick on the lease within 29 days, to commence drilling operations within 59 days and to proceed to drill the "first well" thereon, to pay Perrenot and the Mauldins $15,000 out of ¼th of the first proceeds of the first well, the balance of such proceeds or so much as was necessary, to be retained and used by Stack for the purpose of drilling other wells on the lease; that ¾ths of all excess profits be paid to Perrenot and the Mauldins. This assignment was filed and recorded in the Deed Records of Gregg County on July 15, 1931.

Drilling was started on the lease and by July 25, 1931 the first well had been drilled to a depth of about 2800 feet but had not been completed as a producing well. In order to raise money with which to pay accrued bills and to complete the well, J. E.

Stack, on July 25, 1931, with the approval and ratification of Perrenot, the Mauldins and the Sanders, sold a $40,000 oil payment to Charles Pettit. It was specifically provided in the ratification of the assignment from Stack to Pettit that Stack was to complete the well in accordance with the original contracts of April 17, 1931 and April 18, 1931 and that the failure to do so should restore to Mrs. Virginia Sanders and her husband, J. A. Sanders, all right and title to the leasehold interest; the Sanders in such instrument likewise specifically ratified the original contracts above mentioned. This oil payment was later sold by Pettit to the Producers Investment Corporation. On August 20, 1931, J. E. Stack, in order to raise additional money with which to complete the well, with the approval and ratification of Perrenot, the Mauldins and the Sanders, sold another $40,000 oil payment to Producers Investment Corporation. In their ratification of this assignment, the Sanders again specifically ratified the original contracts of April 17, and April 18, 1931. The two oil payment assignments and the ratifications thereof, insofar as the terms are material hereto, are set out as follows:

"First Oil Payment—J. E. Stack to Charles Pettit

"State of Texas

County of Gregg

"Know All Men by These Presents: That,

"Whereas, on the 3rd day of October, 1930, a certain oil and gas mining lease was made and entered into by and between J. B. Doby, et al., lessors, and W. W. Lechner, lessee, covering the following described land situated in Gregg County, Texas, to-wit:

(Description of the lease in question)

"Now, therefore, for and in consideration of the sum of Ten Dollars ($10.-00) and other good and valuable consideration in hand paid by Chas. Pettit, the receipt of which is hereby acknowledged, I, J. E. Stack have sold, conveyed, assigned and delivered and by these presents do sell, convey, assign and deliver unto said Chas. Pettit, his heirs, executors and assigns seven thirty-second (⁷⁄₃₂) of all of the first oil in under and that may be produced, saved and sold from the North 15 acres of the North 17½ acres of the West 27½ acres of the east half (E½) of the aforesaid 170 acre tract until the said Chas. Pettit has received therefrom the sum of Forty Thousand Dollars ($40,-000.00). It is understood that the payment of no part of said Forty Thousand Dollars ($40,000.00) is a personal obligation of the assignor herein, but that said sum shall be due and payable to the said Chas. Pettit only out of seven thirty-seconds (⁷⁄₃₂) of the first oil produced, saved and sold from said land, if as and when said oil is produced and saved and sold; and that the said seven thirty seconds (⁷⁄₃₂) of the oil produced, saved and sold from said land shall be paid out of and is a part of the seven-eighths (⁷⁄₈) working interest oil, and that the same shall be paid to the said Chas. Pettit without any cost or expense whatsoever in the same manner as the lessors' one-eighth (⅛) royalty interest provided for in said lease.

"To secure the payment to the said Chas. Pettit of said Forty Thousand Dollars ($40,000.00) out of oil as herein provided, the assignor herein grants unto the said Chas. Pettit a lien on an undivided one-fourth (¼) interest in said oil and gas lease and leasehold estate and rights thereunder and personal property equipment and fixtures now on and which may hereafter be placed on said premises.

*    *    *    *    *    *

"The assignor binds and obligates himself to comply with all of the terms of the aforesaid lease, and to develop and operate the same for the production of oil in a diligent and workmanlike manner, it being expressly agreed that if the assignor fails to perform such obligations or ceases to produce oil from said tract once production is obtained, the assignee herein shall have the right to take over the operation and

management of said lease and to operate the same until said Forty Thousand ($40,000.00) is fully paid.

"This assignment shall be sufficient authority for any person, pipe line company or concern which may run the oil from said property, if as and when produced to pay to the said Chas. Pettit the proceeds of seven thirty-seconds (⁷⁄₃₂) of the first oil produced until the said Chas. Pettit has received Forty Thousand Dollars ($40,000.00).

"For the consideration herein stated, I, J. E. Stack, do covenant that I am the lawful owner of the rights and interests herein conveyed, and that I have good right and authority to make this conveyance and that the rights and interests herein conveyed are free and clear of encumbrances and that I will warrant and forever defend the title to same unto the said Chas. Pettit, his heirs and assigns, against all persons whosoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand this the 25th day of July, 1931.

J. E. Stack."

The above oil payment was transferred, sold and conveyed by Pettit to Producers Investment Corporation on August 1, 1931.

"First Ratification

"Dated: July 27, 1931; Filed August 3, 1931, at 8 A.M.; Recorded: Vol. 96, page 443; Deed Records; Gregg County, Texas.

"Mrs. Virginia Sanders, et al, to Chas. Pettit, et al File No. 22081

"State of Texas

County of Gregg

"Know all Men by these Presents:

"Whereas, on October 3, 1930, a certain oil and gas lease was made and entered into by and between J. B. Doby, et al, lessors, and W. W. Lechner, lessee, covering the following described land situated in Gregg County, Texas, to-wit:

(Description of lease in question)

"Whereas, on April 17, 1931, Mrs. Virginia Sanders, the owner of said oil and gas lease and rights thereunder, insofar as the same covers the north 15 acres of the north 17¼ acres of the west 27½ acres of the east half (E½) of the above described 170 acre tract, joined by her husband, J. A. Sanders, did enter into a contract in writing with F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin, the said Mrs. Virginia Sanders and husband, J. A. Sanders, being referred to in said contract as parties of the second part and the other parties being referred to as parties of the first part, which contract provided for the assignment of said 15-acre oil and gas lease to parties of the first part by parties of the second part and the operation thereof, after parties of the first part had drilled a well on said 15-acre tract, said contract being instrument No. 20151 in the office of the County Clerk in and for Gregg County, Texas, to which reference is here made, and,

"Whereas, by instrument dated April 18, 1931, H. C. Mauldin and wife, Buda Mauldin, and F. A. Perrenot, as parties of the second part, did enter into a contract in writing with J. E. Stack, therein called party of the first part, in which the said J. E. Stack as party of the first part agreed to drill a well on said 15-acre tract and providing for the operation and management of said lease by the said J. E. Stack said contract being instrument No. 20647 in the office of the County Clerk of Gregg County, Texas, to which reference is here made, and

"Whereas, on July 7, 1931, H. C. Mauldin and wife, Buda Mauldin, did enter into a contract with F. A. Perrenot determining and fixing the rights of said parties under the contract with J. E. Stack last above mentioned which instrument is file No. 20648 in the office of the County Clerk in and for Gregg County, Texas, to which reference is here made, and

"Whereas, under and by virtue of the aforesaid oil and gas lease and mesne conveyance thereof, particularly the first two contracts hereinabove re-

ferred to the said J. E. Stack has undertaken to drill and is now drilling a well for oil and gas on the above described 15-acre tract, and, for the purpose of enabling the said J. E. Stack to finance the drilling and completion and operation of said lease the said J. E. Stack has by an instrument in writing dated July 25, 1931, transferred, assigned and conveyed unto Chas. Pettit of Dallas County, Texas, one-fourth (¼) of seven eighths (⅞) of the first oil produced, saved and marketed from said 15-acre tract until the said Chas. Pettit or his assigns have received therefrom the sum of Forty-Thousand Dollars ($40,000.00) and the undersigned, owners of interest in said lease and rights thereunder, desire to ratify and confirm said sale to the said Chas. Pettit and the conveyance to the said Chas. Pettit;

"Now, therefore, in consideration of the promises and of the consideration paid by the said Chas. Pettit to the said J. E. Stack, which run to the mutual benefit of the undersigned, the undersigned and each of them do hereby approve said sale and assignment to Chas. Pettit; but it is particularly understood that the said Mrs. Virginia Sanders and husband, J. A. Sanders, assume no responsibility for the drilling or completion or operation of said well or other wells, nor for the performance by the other parties hereto of any other of their obligations under said contract, and with the understanding and in consideration of the agreement by the said J. E. Stack to complete said well in accordance with the original contracts of April 17, 1931, and April 18, 1931, failure to do which shall restore to Mrs. Virginia Sanders and husband, J. A. Sanders, all rights existing under their said contract of April 17, 1931.

"For the purpose of assuring and protecting the said Chas. Pettit, his heirs and assigns, in the property rights and privileges conveyed to him by the said J. E. Stack, Mrs. Virginia Sanders and husband, J. A. Sanders, do by these presents particularly ratify their aforesaid contract with H. C. Mauldin and wife, Buda Mauldin, and F. A. Perrenot of April 17, 1931; and do further ratify and in all respects approve said contract of April 18, 1931, by the said H. C. Mauldin and wife, Buda Mauldin and F. A. Perrenot with the said J. E. Stack; and in view of the said J. E. Stack having now drilled the aforesaid well to an approximate depth of 2,800 feet, and being now sure of complete and entire financing thereof, we, Mrs. Virginia Sanders and husband, J. A. Sanders, do by these presents transfer, assign, convey and set over the aforesaid 15-acre lease and rights thereunder or incident thereto unto the said J. E. Stack, his heirs, executors, and assigns, subject only to the rights of the parties hereto and of Chas. Pettit, his heirs and assigns under and by virtue of the said contract of April 17, 1931, April 18, 1931, and July 25, 1931, respectively.

"To have and to hold unto the said J. E. Stack, and all other parties to said contracts and assignments as their respective interests and the interest of the said Mrs. Virginia Sanders under said contract appear.

"Witness our hands this the 27th day of July, 1931.

Mrs. Virginia Sanders    F. A. Perrenot
J. A. Sanders    H. C. Mauldin
H. C. Mauldin    J. E. Stack."
   by Buda Mauldin
   Agent and Atty in Fact.
Mrs. Buda Mauldin

"Second Oil Payment, August 20, 1931
J. E. Stack to Producers Investment Corporation
File No. 23661
"State of Texas
   County of Gregg:

"Know All Men by these Presents: That,

"Whereas, on the 3rd day of October, 1930, a certain oil and gas mining lease was made and entered into by and between J. B. Doby, et al., lessors, and W. W. Lechner, lessee, covering the

following described land situated in Gregg County, Texas, to-wit:

(Description of lease in question)

"Whereas, said lease and all rights thereunder or incident thereto, insofar as the same covers and affects the interests and rights herein conveyed, are now owned by J. E. Stack, subject only to a certain oil payment and other rights conveyed by the said J. E. Stack to Chas. Pettit to be paid out of one-fourth (¼) of seven-eighths (⅞) of the oil produced from said 15 acres hereinafter described, as fully appears by an assignment to the said Chas. Pettit dated July 25, 1931, and subject to the rights of Virginia Sanders and husband, J. A. Sanders, F. A. Perrenot, and H. C. Mauldin, and wife, Buda Mauldin, under two contracts of date April 17, 1931, and April 18, 1931; and,

"Whereas, the said J. E. Stack has completed the drilling of a well on the portion of the 15 acre tract of land hereinafter described to the top of the sands, operations having been begun by the said J. E. Stack on the 4th day of May, 1931, and thereafter diligently prosecuted; and,

"Whereas, it has become necessary for the said J. E. Stack to obtain additional funds for the completion and equipment of said well and the payment of all outstanding bills pertaining thereto, and the said J. E. Stack has agreed to assign the interest herein conveyed for that purpose;

"Now, therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration in hand paid by Producers Investment Corporation, the receipt of which is hereby acknowledged, I, the said J. E. Stack, the grantor, have sold, conveyed, assigned, and delivered, and do by these presents, sell, convey, assign and deliver to said Producers Investment Corporation, a corporation of Dallas County, Texas, seven thirty-seconds (⁷⁄₃₂) of all of the first oil in, under and that may be produced, saved and sold from the North 15 acres of the North 17½ acres of the West 27½ acres of the East half (E½) of the aforesaid 170 acre tract, until the said Producers Investment Corporation has received therefrom the sum of Forty Thousand Dollars ($40,000.-00). It is understood that the payment of no part of said Forty Thousand Dollars ($40,000.00) is a personal obligation of the grantor herein, but that said sum shall be due and payable to the said Producers Investment Corporation only out of seven thirty-seconds (⁷⁄₃₂) of the first oil produced, saved and sold from said land, if, as and when said oil is produced, saved and sold; and that the said seven thirty-seconds (⁷⁄₃₂) of the oil produced, saved and sold from said land shall be paid out of and is a part of the seven-eights (⅞) working interest oil and a part of the interest of the grantor herein in said working interest, and that the same shall be paid to the said Producers Investment Corporation without any cost or expense whatsoever, in the same manner as the lessor's one-eighth (⅛) royalty interest provided for in said lease.

"To secure the payment to the said Producers Investment Corporation of said Forty Thousand Dollars ($40,000.-00) out of the oil as herein provided, the grantor herein grants unto the said Producers Investment Corporation a lien on said oil and gas lease and leasehold estate and rights thereunder and personal property, equipment and fixtures now on and which may hereafter be placed on said premises.

"The grantor herein, the said J. E. Stack, binds and obligates himself, his heirs and assigns, to comply with all of the terms of the aforesaid lease and with a certain contract heretofore made on April 17, 1931, between J. A. Sanders and wife and F. A. Perrenot, and H. C. Mauldin and wife, and with a certain other contract dated April 18, 1931, between J. E. Stack and F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin, and with all lawful governmental regulations, and to finally and immediately complete the said well

and equip the same, and to develop and operate the same for the production of oil, all in a diligent and workmanlike manner, it being expressly agreed that if the said J. E. Stack fails to perform such obligations or ceases to produce oil from said tract once production is obtained, the said Producers Investment Corporation shall have the right to take over the operation and management of said lease and to operate the same, and sell the oil produced therefrom and apply the same on said Forty-Thousand Dollars ($40,000.00) until the said Forty-Thousand Dollars ($40,000.00) is fully paid. The said J. E. Stack further covenants that no oil will be sold or contracted to be sold at less than the posted prices of the major companies in the field without the written consent of Producers Investment Corporation or its assigns. The said J. E. Stack further covenants with the Producers Investment Corporation and its assigns, that the grantor is the lawful owner of said lease and leasehold and personal property, and that the grantor is the lawful owner of the rights and interests herein conveyed, and that the said lease and leasehold and the said rights and interests are free and clear of all encumbrances, and that the grantor has good right and authority to make this conveyance, and will warrant and forever defend the title to same unto the said Producers Investment Corporation, its successors and assigns, against all persons lawfully claiming or to claim the same or any part thereof. Said J. E. Stack further agrees that if he fails to operate and produce oil from said well with diligence and prudence at any time after production is obtained, or fails in any other particular to observe the covenants herein, all of the oil produced from said lease or the proceeds thereof shall be applied to the payment of said Forty Thousand Dollars ($40,000.00) until the same is fully satisfied.

"This assignment shall be sufficient authority for any persons, pipe line company, or concern which may run the oil from said property, if as and when produced, to pay to the said Producers Investment Corporation and its successors and assigns the proceeds of said seven thirty-seconds (7/32) of the first oil produced until the said Producers Investment Corporation has received Forty-Thousand Dollars ($40,000.00).

"Witness my hand this the 20th day of August, A. D. 1931.

J. E. Stack."

"Second Ratification, August 20, 1931.

"J. E. Stack to Producers Investment Corporation
File No. 23662

"Whereas, on October 3, 1930, a certain oil and gas lease was made and entered into by and between J. B. Doby, et al., lessors, and W. W. Lechner, lessee, covering the following described land situated in Gregg County, Texas, to-wit:

(Description of lease in question)

"Whereas, on April 17, 1931, Virginia Sanders the owner of said oil and gas lease and rights thereunder insofar as the same covers the north 15 acres of the north 17½ acres of the west 27½ acres of the east one-half (E½) of the above described 170 acre tract joined by her husband, J. A. Sanders, did enter into a contract in writing with F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin, the said Virginia Sanders and husband, J. A. Sanders, being referred to in said contract as parties of the second part and the other parties being referred to as parties of the first part, which contract provided for the assignment of said 15 acres of oil and gas lease to parties of the first part by parties of the second part and the operation thereof after parties of the first part had drilled a well on said 15 acre tract said contract being instrument No. 20151 in the office of the County Clerk in and for Gregg County, Texas, to which reference is here made.

"Whereas by instrument dated April 18, 1931, H. C. Mauldin and wife, Buda Mauldin, and F. A. Perrenot as parties of the second part did enter into a contract in writing with J. E. Stack therein called party of the first part in which said J. E. Stack as party of the first part, agreed to drill a well on said 15 acre tract and providing for the operation and management of said lease by the said J. E. Stack, said contract being instrument No. 20647 in the office of the County Clerk of Gregg County, Texas, to which reference is here made, and

"Whereas, on July 7, 1931, H. C. Mauldin and wife, Buda Mauldin, did enter into a contract with F. A. Perrenot determining and fixing the rights of said parties under the contract with J. E. Stack last above mentioned which instrument is numbered 20648 in the office of the County Clerk in and for Gregg County, Texas, to which reference is here made, and,

"Whereas, under and by virtue of the aforesaid oil and gas lease and the contracts of April 17, 1931, and April 18, 1931, the said J. E. Stack has drilled a well on said 15 acre tract down to the producing sand, and is in need of funds for the final completion and equipping of said well, and in order to raise additional funds has by an instrument in writing of even date herewith transferred, assigned and conveyed unto the Producers Investment Corporation of Dallas, Texas, one-fourth (¼) of seven-eighths (⅞) of the first oil produced, saved and marketed from said 15 acre tract until the said Producers Investment Corporation or its assigns has received therefrom the sum of Forty Thousand Dollars ($40,000.00) and the said Producers Investment Corporation and J. E. Stack have entered into another agreement, of even date herewith providing that the consideration to be paid by the Producers Investment Corporation shall be paid direct to the laborers and material men furnishing labor and supplies for the completion and equipping of said well

as is herein provided said assignment to and contract with the Producers Investment Corporation being made a part hereof; and the undersigned the owners of interest in said lease under the contracts of April 17, 1931 and April 18, 1931, and July 7, 1931, desire to ratify and confirm said sale and conveyance and contract of even date herewith, between the said J. E. Stack, and the Producers Investment Corporation.

"Now, therefore, in consideration of the premises and of the consideration paid and to be paid by the said Producers Investment Corporation to the said J. E. Stack, which runs to the mutual benefit of the undersigned, the undersigned and each of them do hereby approve said sale and assignment of even date herewith, by the said J. E. Stack to the Producers Investment Corporation and said contract herewith between the parties relative to the payment of bills incurred in the completion and equipping of said well, it is expressly understood that the said Virginia Sanders and husband, J. A. Sanders, assume no responsibility or liability for the drilling or completion or operations of said well or other wells on said 15 acres nor for the performance by any of the other undersigned parties of any of their obligations under said contract, and with the express understanding and in consideration of the agreement by the said J. E. Stack to finally complete and equip said well in accordance with the original contracts of April 17, 1931, and April 18, 1931, hereabove referred to, as the said J. E. Stack heretofore agreed to do in a similar instrument heretofore executed by said parties on July 17, 1931, to all of which instrument reference is here made (failure to do which shall restore to Virginia Sanders and husband, J. A. Sanders, all rights existing under their said contract of April 17, 1931), it being the intent and purpose of all parties hereto notwithstanding anything herein to the contrary to fully ratify the aforesaid sale and contract of even date herewith by the said

J. E. Stack to the Producers Investment Corporation so that when the said J. E. Stack shall bring in said well and equip the same and connect the same to flow tanks in such manner as the oil may be produced and sold from said tract the Producers Investment Corporation shall have clear and absolute title to one-fourth (¼) of seven-eighths (⅞) of the first oil produced and saved from said land, until it receives said Forty Thousand Dollars ($40,000.00) herein conveyed.

"Witness our hands this the 20th day of August, A. D., 1931.

Mrs. Virginia Sanders  H. C. Mauldin
J. A. Sanders  F. A. Perrenot
Buda Mauldin  J. E. Stack."

All of the above instruments were duly acknowledged by the parties executing same.

On June 1, 1931, Mesdames J. M. Stinnette, and George E. Light instituted suit in the 101st District Court of Dallas County, Texas, against Mrs. Virginia Sanders and her husband, J. A. Sanders, and by amended petition, later joined J. E. Stack as a party defendant in such suit and sought to recover an undivided ⅔rds trust interest in the 15 acre leasehold here involved. Virginia Sanders and husband J. A. Sanders, in their answer expressly alleged that any and all contracts mentioned in the plaintiffs' petition for the development of said lease (referring to the Sanders, Perrenot, Mauldin agreement of April 17, 1931, and the Perrenot, Mauldin, Stack agreement of April 18, 1931, and the working interests and liens created against the oil runs in favor of Pettit and Producers Investment Corporation) were wise and prudent and had been obtained at the minimum expense possible; and in any event, were for the benefit of the true owners of said lease; that it would be inequitable to permit the plaintiffs in such cause to recover any interest in said lease, except subject to outstanding contracts for the development thereof. On the trial of such cause, on October 8, 1932, after transfer to the 14th District Court of Dallas County, Stack abandoned his rights to the lease and set-

tled all issues involved against him and judgment was entered for the plaintiffs, Stinnette and Light, against the Sanders and Stack for a ⅔rds undivided interest in the leasehold. On an appeal the judgment of the trial court was affirmed. See Sanders v. Stinnette, Tex.Civ.App., 73 S.W.2d 637 (W. R.) for more detailed history of cause. None of the appellees in the present suit or their predecessors in title, were parties defendant in that suit.

On September 26, 1931, after the "first well" had been brought in as a producer, Mrs. Virginia Sanders and husband, J. A. Sanders, filed cause No. 95715–E in the 101st District Court of Dallas County against J. E. Stack, the Mauldins and Perrenot and other defendants. Stinnette and Light were not made parties to the suit. From the pleadings of the parties to such suit and the preliminary show cause order of the court, it appears that the only issues involved were the rights of plaintiffs therein to a temporary and permanent injunction restraining Stack and Perrenot from drilling an oil well on a two and one-half acre lease lying immediately South and adjacent to the 15 acre lease here involved, for the appointment of a receiver to take charge of such 15 acre lease under proper orders of the court, and for an accounting for oil produced and sold from said lease in accordance with the contracts between the parties. On December 12, 1931, the time set for the hearing, an agreed judgment was entered by which the Producers Investment Corporation was made receiver and authorized to take charge of and operate the lease including the oil well situated thereon, in accordance with the terms and provisions of the contracts and agreements theretofore entered into by and between the Sanders, Perrenot, the Mauldins, Stack and the Producers Investment Corporation, but it was therein agreed and provided that such agreement and appointment should not effect or prejudice any of the rights of the parties thereto, whether then asserted or thereafter to be asserted by any of such parties, or asserted in the Stinnette-Sanders case, and that all rights of all parties thereto were agreed to be specifically preserved and not affected thereby,

and that all parties thereto might litigate their rights, titles, interests and claims in and to the lease or any other matters in dispute, as they then existed or might be shown to exist, without being prejudiced by anything therein contained. On October 3, 1933, the Sanders filed a motion in the cause to continue the temporary injunction theretofore made, enjoining further operation of the wells on the two and one-half acre tract by Stack, Perrenot, the Mauldins and one Blanche Blewett. In said motion, the Sanders also sought to remove the Producers Investment Corporation as receiver and to appoint another receiver instead. On October 26, 1933, such motion was heard and sustained. The injunction as to operation of the wells on the two and one-half acre tract was continued in effect, the Producers Investment Corporation was removed as receiver and one J. M. Weaver was appointed to operate and manage such 15 acre lease under orders of the court for the mutual benefit of all parties having an interest therein.

On May 15, 1936, Mrs. Stinnette, Mrs. Light and husband, George Light, and George Light, Jr., Leonard M. Levy and William M. Evans, after first obtaining leave of the court, filed in the aforesaid receivership suit a plea of intervention and cross-action asserting title and right to possession of the 15 acre leasehold for which they asked judgment as against plaintiffs therein, Mrs. Virginia Sanders and husband, J. A. Sanders, and defendants therein, J. E. Stack, H. C. Mauldin and wife, Buda Mauldin, F. A. Perrenot, Charles Pettit, Blanche Blewett, a feme sole, and Producers Investment Corporation. Of all parties named, defendants in such cross action, the Producers Investment Corporation alone, was served with citation, and alone made answer thereto. On September 10, 1936, Producers Investment Corporation filed its answer to such cross-action alleging that in addition to its right to the two oil payments it had "acquired the interest of the plaintiffs, Mrs. Virginia Sanders and husband, J. A. Sanders", and that it owned ⅓ of the entire leasehold estate and prayed judgment of the court therefor.

The intervenors and plaintiffs in such cross-action filed further pleadings which were joined in by pleadings of the Producers Investment Corporation to close the receivership, alleging that all matters in controversy between parties had been settled by an agreement between the parties. Hearing on the receivership motion was set for September 19, 1936, but no notice was then given to appellees and judgment was entered on that date, reciting that all parties to the cause came in person and by attorneys and announced ready for trial, waived a jury and submitted all matters of law and fact to the court; that after hearing the pleadings, the evidence and argument of counsel, the court entered judgment decreeing that all interest in the leasehold and profits derived therefrom and the title thereto was vested in appellants herein in the various proportions as claimed by them. Appellees were not mentioned in the judgment except by inference as "other parties" thereto.

Appellees herein, Mrs. Buda Mauldin and those claiming under Perrenot, as plaintiffs in the trial court directly attacked in the 101st District Court of Dallas County the above mentioned judgment entered by said court in said cause No. 95715, Sanders v. Stack, et al., on the grounds that it was not in truth and fact a judgment but was only a contract between appellants, the participating parties thereto, and further sought to set it aside because of lack of citation or notice, jurisdictional grounds and fraudulent concealment and practices in its procurement.

Upon the trial of the cause, the following fact issues were submitted to the jury and the answers indicated were made thereto:

"No. 1. Do you find * * * that within 29 days from April 18, 1931, J. E. Stack had a derrick on the 15 acre Doby lease in the Castleberry Survey? Answer: No.

"No. 3. Do you find * * * that J. E. Stack commenced drilling operations on the 15 acre Doby lease within 59 days from April 18, 1931? Answer: No.

"No. 5. Do you find * * * that before the first oil well on the 15 acre Doby lease was completed and brought in as a producer, J. E. Stack abandoned the job of drilling the said well? Answer: Yes.

"No. 6. Do you find * * * that the Mauldins and Perrenot completed the drilling of the first oil well on the 15 acre Doby lease and brought it in as a producer? Answer: Yes.

"No. 6–A: Do you find * * * that such completion of the first oil well by the Mauldins and Perrenot * * * was accomplished without cost or expense to Mr. and Mrs. J. A. Sanders? Answer: Yes.

"No. 7: Do you find * * * that after the bringing in of well No. 1 as a producer of oil Mrs. J. M. Stinnette and Mrs. George Light accepted benefits resulting from the drilling of said well? Answer: Yes.

"No. 7–A: Do you find * * * that at and after the time when Mrs. J. M. Stinnette and Mrs. George Light accepted benefits from the drilling of the first well * * * the Mauldins and Perrenot were claiming an interest in the 15 acre Doby lease? Answer: Yes.

"No. 7–B: Do you find * * * that on and after the time when Mrs. J. M. Stinnette and Mrs. George Light accepted benefits from the drilling of the first well, they or their attorneys had full knowledge of the claim of the Mauldins and Perrenot to an interest in the 15 acre Doby lease? Answer: Yes.

"No. 7–C: Do you find * * * that on and after the time when Mrs. J. M. Stinnette and Mrs. George Light accepted benefits from the drilling of the first oil well they, or their attorneys, had full knowledge of the work and acts done by the Mauldins and Perrenot in drilling said oil well * * *? Answer: Yes.

"No. 9: Do you find * * * that it was a practice in the District Courts of Dallas County, Texas, on or about September 19, 1936, for litigants, or their attorneys, who obtained a setting for the trial of a jury case to give notice of opposing litigants, or their attorneys, of the date set for the trial? Answer: Yes.

"No. 10: Do you find * * * that prior to September 19, 1936, Producers Investment Corporation, Virginia Sanders, Mrs. J. M. Stinnette, Mrs. George Light, George Light, George Light, Jr., Leonard Levy, and William Evans, or their attorneys, failed to give notice to the Mauldins and Perrenot that Cause No. 95715–E pending in the 101st District Court was set for hearing on September 19, 1936? Answer: Yes.

"No. 11: Do you find * * * that Producers Investment Corporation, Mrs. Virginia Sanders, Mrs. J. M. Stinnette, Mrs. George Light, George Light, George Light, Jr., Leonard Levy, and William Evans, or their attorneys, by failing to give such notice * * * intended to conceal from the Mauldins and Perrenot the fact that Cause No. 95715–E was set for September 19, 1936? Answer: Yes.

"No. 12: Do you find * * * that such failure to give notice * * * did actually conceal from the Mauldins and Perrenot the fact that Cause No. 95715–E was set for trial September 19, 1936? Answer: Yes.

"No. 13: Do you find * * * that such concealment * * * resulted in the failure of the Mauldins and Perrenot to be present in the 101st District Court and to assert their claim, if any, to an interest in the Doby 15 acre lease in question at the trial of Cause No. 95715–E on September 19, 1936? Answer: Yes.

"No. 14: Do you find * * * that the judgment of September 19, 1936, in Cause No. 95715–E, was a judgment which was the result of an agreement between Mrs. J. M. Stinnette, Mrs. George Light, the Producers Investment Corporation and Levy and Evans, or their attorneys, acting for such parties? Answer: Yes.

"No. 15: Do you find * * * that the Mauldins used diligence in looking after their interest, if any, in Cause No. 95715–E in the 101st District Court, Dallas County, Texas? Answer: Yes.

"No. 16: Do you find * * * that Fred A. Perrenot used diligence in looking after his interest, if any, in said Cause No. 95715–E in the 101st District Court, Dallas County, Texas? Answer: Yes.

"No. 21: Do you find * * * that after September 19, 1936, H. C. Mauldin and his wife, Mrs. Buda Mauldin, used diligence to discover whether or not a judgment had been entered in Cause No. 95715–E? Answer: Yes.

"No. 22: Do you find * * * that after September 19, 1936, Fred A. Perrenot used diligence to discover whether or not a judgment had been entered in Cause No. 95715–E? Answer: Yes.

"No. 23: Do you find * * * that Mr. H. C. Mauldin and Mrs. Buda Mauldin used diligence in the filing of this suit after discovering or knowing about the judgment of September 19, 1936, in Cause No. 95715–E in the 101st District Court? Answer: Yes.

"No. 24: Do you find * * * that Fred A. Perrenot used diligence in filing this suit after first discovering or knowing about the judgment of September 19, 1936, in Cause No. 95715–E in the 101st District Court? Answer: Yes.

"No. 25: Do you find * * * that on or about the 22nd day of August, 1931, J. E. Stack acquiesced in the restoration to Virginia Sanders and husband, J. A. Sanders, all rights existing under the contract of April 17, 1931? Answer: No.

"No. 27: Do you find * * * that after August 20, 1931, J. E. Stack failed to finally complete and equip the No. 1 well on the J. B. Doby 15 acre lease? Answer: Yes.

"No. 28: Do you find * * * that on or about the 22nd day of August, 1931, the Mauldins and Perrenot, on the one hand, and J. E. Stack, on the other, agreed on the terms for an adjustment and settlement of their accounts under their contract of April 18, 1931? Answer: Yes.

"No. 29: Do you find * * * that at the time of the first purchase by Mrs. Wood of an interest in said 15 acre lease from Mrs. Stinnette, she had knowledge of such facts as would have put an ordinarily prudent person on inquiry as to the title of said lease? Answer: Yes.

"No. 30: Do you find * * * that if Mrs. Wood had pursued with reasonable diligence an inquiry as to such facts, she would have discovered the claims of the Mauldins and Perrenot as to such 15 acre lease? Answer: Yes.

"No. 30–A: Do you find * * * that at the time the said first oil well was brought in as a producing oil well on said 15 acre Doby lease, J. E. Stack, Fred A. Perrenot, and B. M. Dorrity were acting as partners, as that term is herein defined, in the operations on the Doby 15 acre lease? Answer: No.

"No. 31: Do you find * * * that J. E. Stack by his own efforts drilled the first oil well on the 15 acre Doby lease and brought it in as a producing well? Answer: No.

"No. 33: Do you find * * * that prior to September 19, 1936, H. C. Mauldin and Buda Mauldin abandoned any claim they may have had to ownership of an interest in the 15 acre Doby lease? Answer: No.

"No. 36: Do you find * * * that prior to September 19, 1936, Fred A. Perrenot abandoned any claim he may have had to ownership of an interest in the 15 acre Doby lease? Answer: No.

"No. 37: Do you find * * * that the Mauldins and Perrenot had notice before the signing and delivery of the agreement dated April 17, 1931, of the claims of Mrs. J. M. Stinnette and Mrs. George Light to a one-third interest each in the 15 acre Doby lease? Answer: No.

"No. 38: Do you find * * * that H. C. Mauldin and Buda Mauldin fail-

ed to present any claim to the Doby lease in Cause No. 95715–E prior to September 19, 1936? Answer: Yes.

"No. 39: Do you find * * * that the failure of H. C. Mauldin and Buda Mauldin to present any claim to the Doby 15 acre lease in Cause No. 95715–E prior to September 19, 1936, if there was such a failure, constituted negligence on the part of H. C. Mauldin and Buda Mauldin? Answer: No.

"No. 40: Do you find * * * that Fred A. Perrenot failed to present any claim to the Doby lease in Cause No. 95715–E prior to September 19, 1936? Answer: Yes.

"No. 41: Do you find * * * that the failure of Fred A. Perrenot to present any claim to the Doby 15 acre lease in Cause No. 95715–E prior to September 19, 1936, if there was such a failure, constituted negligence on the part of Fred A. Perrenot? Answer: No.

"No. 42: Do you find * * * that Lester Whipple failed to present any claim to the Doby lease in Cause No. 95715–E prior to September 19, 1936? Answer: Yes.

"No. 43: Do you find * * * that the failure of Lester Whipple to present any claim to the Doby 15 acre lease in Cause No. 95715–E prior to September 19, 1936, if there was such a failure, constituted negligence on the part of Lester Whipple? Answer: No.

"No. 44: Do you find * * * that Nancy Fritz Moon failed to present any claim to the Doby lease in Cause No. 95715–E prior to September 19, 1936? Answer: Yes.

"No. 45: Do you find * * * that the failure of Nancy Fritz Moon to present any claim to the Doby 15 acre lease in Cause No. 95715–E prior to September 19, 1936 if there was such a failure, constituted negligence on the part of Nancy Fritz Moon? Answer: No.

"No. 46: Do you find * * * that Mrs. Fannie G. Morgan failed to pre-sent any claim to the Doby lease in cause No. 95715–E prior to September 19, 1936? Answer: Yes.

"No. 47: Do you find * * * that the failure of Mrs. Fannie G. Morgan to present any claim to the Doby 15 acre lease in Cause No. 95715–E prior to September 19, 1936, if there was such a failure, constituted negligence on the part of Mrs. Fannie G. Morgan? Answer: No.

"No. 48: Do you find * * * that H. C. Mauldin and Buda Mauldin by the use of ordinary diligence could have known prior to September 19, 1936, of the setting made by Judge Claude Mc-Callum in Cause No. 95715–E in the 101st District Court for the hearing on September 19, 1936? Answer: No.

"No. 49: Do you find * * * that Fred A. Perrenot by the use of ordinary diligence could have known prior to September 19, 1936 of the setting made by Judge Claude McCallum in Cause No. 95715–E in the 101st District Court for the hearing on September 19, 1936? Answer: No.

"No. 50: Do you find * * * that prior to September 19, 1936, the Mauldins, by their acts and conduct, represented to Mrs. J. M. Stinnette, Mr. and Mrs. George E. Light, Mr. and Mrs. J. A. Sanders, Producers Investment Corporation, Leonard M. Levy, and William L. Evans that J. E. Stack had completed the drilling of the first well in the 15 acre lease involved in this suit? Answer: No.

"No. 53: Do you find * * * that prior to September 19, 1936, Fred A. Perrenot, by his acts and conduct, represented to Mrs. J. M. Stinnette, Mr. and Mrs. George E. Light, Mr. and Mrs. J. A. Sanders, Producers Investment Corporation, Leonard M. Levy, and William L. Evans that J. E. Stack had completed the drilling of the first well on the 15 acre lease involved in this suit? Answer: No.

"No. 56: Do you find * * * that at the time of its purchase from Mrt. Virginia Sanders of her interest in the

15 acre Doby lease by the Producers Investment Corporation, H. C. Mauldin and Buda Mauldin, by their acts, conduct, and omissions, if any, and failure to act, if any, represented to Producers Investment Corporation that they were making no claim to the Sanders' interest in the Doby 15 acre lease? Answer: No.

"No. 59: Do you find * * * that at the time of its purchase from Mrs. Virginia Sanders of her interest in the 15 acre Doby lease by the Producers Investment Corporation, Fred A. Perrenot, by his acts, conduct and omissions, if any, and failure to act, if any, represented to Producers Investment Corporation that he was making no claim to the Sanders' interest in the Doby 15 acre lease? Answer: No."

Judgment was entered in this cause on March 4, 1950, making final an interlocutory judgment from a previous trial against J. E. Stack and B. M. Dorrity clearing title to the leasehold in question as to each of said parties. It was further decreed that Mrs. Buda Mauldin as to a one-half undivided interest and the Perrenot parties as to a one-half undivided interest were the owners and entitled to possession of the 15 acre lease and all production and proceeds therefrom in accordance with the contract of April 17, 1931. H. C. Mauldin had previously assigned his interest to Mrs. Mauldin. It was decreed that the Producers Investment Corporation, who had purchased the Sanders interest, was entitled to one-third of one-half of the net proceeds from the lease; that Mrs. J. M. Stinnette and under her, Mrs. Annabelle Stinnette Wood, and certain other claimants were entitled to one-third of one-half of the net proceeds from the lease; that Mrs. Light and under her, George Light, Jr., those claiming under Levy, who was deceased, and Evans, and certain other claimants, were entitled to one-third of one-half of the net proceeds from the lease, all in accordance with the contract of April 17, 1931. It was decreed that Producers Investment Corporation, the holder of the Sanders interest, Mrs. Stinnette, the Lights and those claiming under them, were entitled to the sum of $15,000 in accordance with the contract of April 17, 1931. It was decreed that Producers Investment Corporation was entitled to the sum of $40,000 and then an additional $40,000 out of ⅞₂nds of the oil produced, saved and marketed from said 15 acre lease. It was further decreed in substance that the cost and expense of drilling and equipping the second, third and fourth wells on the 15 acre lease was chargeable against production ahead of net proceeds in accordance with the contract of April 17, 1931, the second and third wells having been drilled and equipped during the receivership of Joseph Weaver and a fourth having been drilled and equipped after September 19, 1936, when Mr. Weaver was discharged as receiver. Title was quieted in Mrs. Buda Mauldin as to her one-half undivided interest and quieted in the Perrenot parties as to their one-half undivided interest in the 15 acre lease, as to the judgments in Cause No. 95715-E, the receivership case, and Cause No. 93579, the Stinnette, Light, Sanders case, and to all other parties to this cause. Producers Investment Corporation, the Lights, Stinnettes and those claiming under them have appealed from such judgment.

In appellants' first four points it is either urged or assumed that the agreement of April 17, 1931 upon which appellees (Mauldin and Perrenot parties) base their whole claim of title to the lease in question was by mutual consent of the parties superseded and replaced by a new and different agreement. Such claimed new and different agreement was the ratification agreement executed and delivered to Stack by Mr. and Mrs. Sanders dated July 27, 1931 and joined in by H. C. Mauldin, Buda Mauldin and F. A. Perrenot. Appellants contend that the ratification agreement conveyed legal title to all of the lease involved in this suit unconditionally to J. E. Stack; that such title remained in Stack until October 8, 1932 when the judgment of the 14th Judicial District Court in Cause No. 93597 styled Mrs. J. M. Stinnette, et al. v. Virginia Sanders, et al., divested legal title to the lease involved out of J. E. Stack and vested it in Mrs. Stinnette, Mrs. Light and Mrs. Sanders.

■ We cannot agree that the contract of April 17, 1931, was so replaced and superseded. Stack had by his contract with Perrenot, and the Mauldins, on April 18, 1931, agreed to drill to completion the first oil well on the 15 acre lease and the vesting of any title in Stack was conditional upon his performance of such agreement. When it became necessary to secure money from Pettit to continue the drilling of the well, an oil payment of $40,000 to be paid out of 7/32nds of the first oil as if and when produced and marketed therefrom, was sold to Pettit by instrument executed by Stack on July 25, 1931. The ratification agreement of July 27th executed by Mr. and Mrs. Sanders, the Mauldins and Perrenot, referred to the contracts of April 17th and April 18th, 1931 and provided that the obligations of the parties thereto remained unchanged. Mr. and Mrs. Sanders particularly ratified their agreement of April 17th with Perrenot and the Mauldins. The stated purpose of the ratification instrument was to protect Pettit, his heirs and assigns in the $40,000 oil payment conveyed to him by Stack. The assignment therein of the 15 acre lease to Stack was by the terms thereof "subject only to the rights of the parties hereto and of Charles Pettit, his heirs, and assigns under and by virtue of the said contracts of April 17, 1931, April 18, 1931 and July 25, 1931 respectively."

We are of the opinion that the agreement of April 17, 1931, upon which appellees base their claim, was not replaced and superseded by the ratification agreement, insofar as title to the lease was involved, but that by the terms of such ratification, Perrenot and the Mauldins retained all rights thereunder subject only to the $40,000 oil payment to Pettit. They were not parties to the Stack-Sanders suit, No. 93597 in the 14th District Court and were not affected by the judgment entered therein on October 8, 1932, against Stack. Such judgment did not divest title to the lease or any part thereof out of Stack because such title had never become vested in him. The contracts of both April 17 and 18, 1931, were executory and the vesting of legal title in the Mauldins and Perrenots under contract of April 17th and in Stack under contract of April 18th was contingent upon the performance of the contracts by such parties. It was found by the jury upon sufficient evidence that Stack did not perform his contract but abandoned same. It, therefore, appears that Stack not only acquired no absolute title under the ratification agreement, as claimed by appellants, but by reason of his abandonment of the well and his failure to comply with the terms of the contract of April 18, 1931, he also lost the right therein granted to acquire title to the lease.

■ It is urged by the Stinnettes and Lights and those claiming under them, that they never recognized any of the Sanders, Mauldins, Perrenots, Stack contracts as binding, nor accepted any benefits thereunder and that before Mauldin and Perrenot acquired title to the lease, both had actual and constructive notice of the rights of Mrs. Stinnette and Mrs. Light because an affidavit setting up their claim against Mrs. Sanders was filed for record in Gregg County where the 15 acre lease is located on May 28, 1931, and that a lis pendens notice of the filing of Cause No. 93957 by Stinnette and Light against the Sanders and Stack was filed in Gregg County on August 4, 1931. In our opinion, this contention is untenable. When Mauldin and Perrenot entered into possession of the 15 acre lease under the contract of April 17, 1931, they acquired an equitable interest in the property with the right to proceed with the performance of the terms thereof which when fully performed, would vest in them full legal title. 43 Tex.Jur., page 241; Alworth v. Ellison, Tex.Civ.App., 27 S.W.2d 639; American Nat. Ins. Co. v. Bass, Tex.Civ.App., 111 S.W.2d 769; Pevehouse v. Oliver Farm Equipment Sales Co., Tex.Civ.App., 114 S.W.2d 658. Perrenot and Mauldin were required to look only for conveyances made prior to their contract of April 17, 1931 or of their entry into possession of the lease. 43 Tex.Jur., page 61. It is also to be noted that one of the contentions upon which this point is based is that the Stinnettes and Lights never recognized the contract of April 17, 1931 as binding nor

accepted any benefits thereunder. This contention is contrary to the jury finding that Mrs. Stinnette and Mrs. Light did accept benefits resulting from the drilling of the well with full knowledge of work and acts done by Perrenot and the Mauldins in drilling the well and of their claims in the lease. These findings had support in the evidence.

■ It is shown that Mrs. Annabelle Stinnette Wood purchased from her mother, Mrs. Stinnette, a ⅛ interest in the lease in question. The contention is made that she was a bona fide purchaser of such interest and is entitled to have same awarded to her free of all claims by appellees. The findings of the jury in answer to special issues Nos. 29 and 30 are contrary to this contention and are supported by the evidence. In addition, the contract of April 17, 1931 was of record at at all times and Mrs. Wood was charged with knowledge thereof. Mrs. Wood testified that she knew about the litigation concerning the property in which her mother had been involved and did not make the purchase until it had been terminated by the judgment of September 19, 1936, in Cause No. 95715–E. An examination of the record in such cause would have disclosed that although Mauldins and Perrenots were parties to the suit, and an order had been entered by the court on December 12, 1931, which provided that all parties thereto might thereafter have their claims to title on other claims adjudicated, that when pleadings were filed by appellants setting up their claim to title to all of said lease, no service of citation was had upon the Mauldins or Perrenot. An examination of the papers in the case would also have indicated that the judgment entered was an agreed judgment of the parties therein specifically named and that Perrenot and the Mauldins were mentioned therein only by inference and not by name. Under these circumstances, Mrs. Wood was not an innocent purchaser for value.

■ In appellants' fifth point it is contended that Perrenot and the Mauldins continuously and consistently, by their acts, pleadings filed in court, and by their deeds induced Mrs. Sanders, Mrs. Stinnette and Mrs. Light and their assigns to believe that J. E. Stack commenced and drilled to completion the J. E. Stack No. 1 well and that he acquired title to the 15 acre lease here involved and complied with all of his agreements pertaining thereto; that Mrs. Sanders, Mrs. Stinnette and Mrs. Light were thereby induced to rely on the truth of such conduct and action from July, 1931 up to January 17, 1939 and that Perrenot and the Mauldins, their heirs and assigns are now estopped to contend otherwise.

The jury has found the facts to be contrary to appellants' contentions under this point. It was found that neither Perrenot nor the Mauldins by their acts and conduct, represented to appellants that J. E. Stack had completed the drilling of the first well; that Perrenot and the Mauldins did not represent to appellants, by their acts, conduct or omission that they were making no claim to the Sanders interest in the lease; that after the bringing in of the first well as a producer, Mrs. Stinnette and Mrs. Light accepted benefits therefrom, at which time Perrenot and the Mauldins were claiming an interest in the lease with the full knowledge of Mrs. Stinnette and Mrs. Light. Unless the evidence conclusively establishes facts contrary to such jury findings, appellants' fifth point is untenable, or stated otherwise, if there is any evidence to support the jury findings, appellants' fifth point is untenable. In our opinion, there was evidence to support such findings. There was evidence that Stack abandoned the drilling of the well and left the rig on the lease to be used in its completion. There was evidence that Perrenot and Mauldin completed the drilling of the well and brought it in as a producer on September 3, 1931; that on September 15, 1931, Mrs. Stinnette admitted that she knew the well had been drilled by Perrenot and the Mauldins; that she had seen Perrenot on the lease drilling the well and that she and Mrs. Light knew from the beginning that Perrenot and the Mauldins were in possession of the lease and drilling the well. In connection with these facts, it is interest-

ing to note, although Perrenot and the Mauldins were in possession of the lease and drilling, that they were not made parties to the suit brought on June 1, 1931 by Stinnette and Light against the Sanders, Cause No. 93597, although they did, on August 1st, make Stack a party thereto and had him served with citation in September, 1931. In Cause No. 95715, filed on September 26, 1931 by the Sanders, originally brought to restrain the drilling of the well on the two and one-half acre lease and seeking to recover the $15,000 oil payment under the contract of April 17, 1931, and for the appointment of a receiver, the Sanders alleged: "that the said J. E. Stack, with the knowledge of his said co-defendants (Perrenot and the Mauldins) has abandoned said property." In spite of the allegation that Stack had abandoned the well with the knowledge of the Mauldins and Perrenot, the suit sought to enforce such contract of April 17, 1931, or at least the $15,000, oil payment therein provided, which is inconsistent with the contention that the Mauldins and Perrenot were not claiming an interest in the lease regardless of a breach or default by Stack.

Then, on December 12, 1931, after the Stinnettes and Lights had become parties to Cause No. 95715, the order appointing Producers Investment Corporation as receiver, was entered by agreement and it provided that all parties thereto might litigate their rights, titles and interest claims in the lease without being prejudiced by anything contained in such agreement or order, which indicates that the Sanders, Stinnettes and Lights had knowledge that Perrenot and the Mauldins were making claims under their contract. The evidence in our opinion supports the finding of the jury. It is true that there was some evidence to the contrary, but such evidence does not show conclusively that Mrs. Sanders, Mrs. Stinnette and Mrs. Light were induced by any conduct of Perrenot and the Mauldins to believe and rely upon any representation or conduct to the effect that J. E. Stack commenced and drilled to completion the well in question and that Stack thereby acquired title to the lease. We cannot agree with appellants'

contention that the pleadings of Mrs. Mauldin and Perrenot filed in Cause No. 95715 prior to the entry of the order of December 12, 1931, which pleading denied that Stack had breached his contract, was conclusive evidence as to their position at that time and further conclusively showed that appellants were thereby misled as to the basis of appellees' claim of title and relied upon the truth of such allegations and representations to their damage. There was evidence to the effect that the attorney who filed such pleading was the attorney for Stack whose interest was in conflict with that of the Mauldins and Perrenot; that Mrs. Mauldin thereafter discharged such attorney and employed another; that such attorney was never authorized to represent Perrenot; and as previously indicated that Mrs. Sanders, Mrs. Stinnette and Mrs. Light had knowledge that Perrenot and the Mauldins were claiming title to the lease on the ground that they themselves had completed the well. This evidence, when considered together with other evidence in the case, on the question involved, raised a fact issue for jury determination which has been found against appellants. Their fifth point is overruled.

Appellants' sixth, seventh, eighth and ninth points urge that the long continued failure of Perrenot and the Mauldins to either prevent the entry of the judgment on September 19, 1936, in Cause No. 95715–E, or thereafter attempt to set the same aside prior to the filing of an attempted bill of review on January 17, 1939, constitutes neglect, want of diligence and laches and that they are barred as a matter of law from recovering any of the relief herein sought.

The facts material to a determination of these points have likewise been found against appellants, and the points must be overruled if the findings of the jury have support in the evidence. The jury findings were in substance that both Perrenot and the Mauldins used diligence in looking after their interest and to discover whether or not a judgment had been entered in Cause No. 95715–E; that Perrenot and Mrs. Mauldin used diligence in filing the instant suit after discovering the judg-

ment of September 19, 1936; that neither Perrenot nor the Mauldins had abandoned their claim of ownership of the lease in question and that neither Perrenot nor the Mauldins could, by the use of ordinary diligence have known of the setting of September 19, 1936, prior to said date; that appellants intended to conceal the setting of September 19, 1936 from appellees; that by their failure to give notice of the hearing of the cause, they did actually conceal the setting; that such concealment resulted in the failure of Perrenot and the Mauldins to be present at the trial; that the judgment of September 19, 1936 was the result of an agreement between appellants.

In our opinion, all of said findings are supported by evidence. Cause No. 95715–E, filed on September 26, 1931, by the Sanders against Stack, Perrenot and the Mauldins, was as has been previously indicated originally brought to restrain the drilling of an oil well on a two and one-half acre lease immediately south of the 15 acre lease here in controversy and for the appointment of a receiver to take charge of the 15 acre lease under proper orders of the court. Title to the lease in question was not involved in such suit under its original pleadings. On December 12, 1931, the time set for the receivership hearing and when there were many outstanding obligations against the lease, an agreed order was entered appointing Producers Investment Corporation, receiver. In such order, it was provided that all rights of all parties to the suit were preserved and not affected thereby and that all of such parties might thereafter litigate their rights, titles, interests and claims in and to the lease or any other matter in dispute between them without being prejudiced by anything in such order and agreement. The receivership provided for by the above order continued in effect through the receiver therein appointed and through Joseph M. Weaver who in 1933 replaced Producers Investment Corporation as receiver for such lease, until the year 1936 when it appeared that all debts were either paid by the receiver or that there was sufficient monies on hand with which to pay same.

On May 15, 1936 Mrs. Stinnette, Mrs. Light and husband, George Light, and George Light, Jr., Leonard M. Levy, and William M. Evans, after obtaining leave of the court, filed in the receivership suit a cross action asserting title to and possession of the 15 acre leasehold and asked judgment of the court therefor against plaintiff therein, Mrs. Virginia Sanders and her husband, and defendants therein, Stack, Perrenot, the Mauldins, Producers Investment Corporation, Charles Pettit and Blanche Blewett, a feme sole. This pleading injected into the case the question of the title to the 15 acre leasehold. After setting out their claim of title to the lease the following, among other allegations, are included in such pleading:

"These defendants and intervenors allege that during the pendency of this suit that by agreement of all parties and the order of this court herein, defendant, Producers Investment Corporation was placed in charge of the premises and of the producing oil well then upon the same * * *. These defendants and intervenors made and entered into a certain contract with said Producers Investment Corporation on or about the 22nd day of June 1932 * * *. These defendants and intervenors agreed that said Producers * * * should be entitled to receive the sum of $26,666.67, out of ¼th of ⅔rds of the oil and gas and other minerals produced from the leasehold estate * * * that said Producers * * * remained in possession * * * to on or about the 26th day of October, 1933, when, on account of the defaults and wrongs of said Producers * * * it was removed as the Receiver * * * and Joseph M. Weaver was appointed Receiver * * * that said Producers * * * ran all the oil produced from the leasehold to its own credit in the pipeline and received and collected the proceeds therefor * * * failed and refused to pay operating expenses * * * was in violation of the order of this court * * * became necessary to appoint Joseph M. Weaver, Receiver herein in accordance with the

order, judgment and decree of this court entered on the 26th day of October, 1933 * * * said Producers * * * at the time of entering into the aforesaid contract * * * fraudulently induced these defendants and intervenors to make and enter into said agreement * * * by false and fraudulent representations * * * said contract should be cancelled."

Service of citation on the above cross action was had on the Producers Investment Corporation but no other party defendant thereto was cited.

Producers Investment Corporation filed its answer to the intervention and cross action and alleged that it had acquired the interest of the Sanders and that it then owned ⅓rd of the entire leasehold and prayed judgment therefor. It joined Mrs. Stinnette and Mrs. Light in requesting that the receiver be discharged.

On August 25, 1936, an order was entered in Cause No. 95715–E providing that "a hearing on said motion to dissolve said receivership be held * * * on September 19, 1936 at 9:00 o'clock A.M." The above order is apparently the only setting made of the case and Perrenot and the Mauldins received no notice thereof nor were they served with citation advising them of the claims of title to the leasehold interest set up in the cross action of the intervenors or by Producers Investment Corporation in its amended pleadings.

On September 19, 1936, the judgment sought to be set aside in the instant case was entered. At the time of the entry of such judgment there were three producing oil wells on the 15 acre lease and a fourth had been started. Proration was being observed in the West Texas oil field and this had materially restricted the production of oil on the lease here involved, so that the income from said property, the drilling of wells thereon and the payment of obligations necessarily extended over a long period of time. Perrenot and the Mauldins by reason of their contractual relations were required to submit to a long term waiting process since they were not entitled to receive any of the proceeds of said lease as their part of the profits therefrom until such other oil wells as "were expedient and authorized by law" had been completed thereon, until the $15,000.00 oil payment which they agreed to pay Mrs. Sanders had been satisfied, the two $40,-000.00 oil payments to which Producers Investment Corporation was entitled and various other expenses necessary to the development and operation of the lease, had been taken care of.

When Producers Investment Corporation was made receiver of the 15 acre leasehold on December 12, 1931, no claim was made in Cause No. 95715–E nor had claim been made in any other suit questioning the rights of Perrenot and the Mauldins in such lease under the contract of April 17, 1931. On the contrary, the appointment of the receiver was made upon the agreement of all parties to the cause and was specifically stated to be "in accordance with the terms and provisions of the contracts and agreements heretofore entered into by and between Virginia Sanders, J. A. Sanders, F. A. Perrenot, H. C. Mauldin and Buda Mauldin, J. E. Stack and the Producers Investment Corporation." It was also specifically provided that the parties thereto did not by reason of such agreement and order, affect or prejudice the rights of any of the parties but they might litigate their rights, titles, and claims in and to the lease without being prejudiced by anything therein contained. It is apparent that the above mentioned obligations, debts and charges against the lease were not discharged and disposed of until about the time of the receivership hearing which was set for September 19, 1936. There is evidence to the effect that frequent inquiries were made of the Producers Investment Corporation as to the progress of the oil payment in question which would normally not be paid out for some five or six years in view of reduced allowables. There is no conclusive evidence, if indeed there is any at all, that during this period any question was raised by Producers Investment Corporation, the Sanders, Stinnettes or Lights against the interests or rights of Perrenot and the Mauldins under their contract of

April 17, 1931, in a manner which would put Perrenot and the Mauldins on notice thereof.

The evidence indicates that in March or April of 1938, Mr. Whipple as attorney for the Perrenot interests, went to Dallas for the purpose of determining what additional time would be required to liquidate the oil payments in question. Mr. Whipple was told by a bookkeeper of Producers Investment Corporation that the oil payments had not yet been completed. Mr. Whipple then suggested that division orders should be signed by the Perrenot owners so that they would be in line for payment when the oil payments were disposed of. He was referred to the President of the Corporation by the bookkeeper and finally to an attorney for such corporation who on or about the latter part of September, 1938, advised Mr. Whipple that Producers Investment Corporation had told him that some sort of judgment had been taken against Perrenot but that they did not know whether the judgment was in Dallas County or Gregg County. This was the first time that it was in any way brought to the attention of any of appellees that a judgment had been taken against them. An extensive investigation, examination of abstracts and of court house records in Gregg County and Dallas County was made to find a judgment or to obtain facts necessary to file suit. Mr. Whipple made contact with the Mauldins and through them, their attorney, Mr. Alonzo C. Scurlock, who, upon being informed of the purported judgment, joined in efforts to find same. Appellees were not parties to the Stinnette-Light-Sanders Stack Cause No. 93597 in the 14th District Court. Their names were not mentioned in the judgment in Cause No. 95715–E. The evidence indicates that they were unable to obtain any information from appellants and that court papers were unable to be found. In an effort to diligently pursue their claim, suit was first filed in the wrong court and when it was discovered and became apparent to appellees that the judgment relied upon by appellants to divest them of their claim in the lease in question was the judgment of September 19, 1936, in Cause No. 95715–E, the instant suit was brought. At that time little of the necessary information had been obtained to properly allege and prosecute such cause and numerous motions were made to dismiss the suit on account of failure to name all necessary parties. Hearings on these motions to dismiss and pre-trial procedure continued over a period of several years. These facts, in our opinion, support the jury finding that Perrenot and the Mauldins used diligence in looking after their interests and in filing and prosecuting the instant suit.

Appellants particularly urge that there was no evidence to support the jury finding that they intentionally concealed from Perrenot and the Mauldins the fact that Cause No. 95715–E was set for hearing on September 19, 1936, but that the uncontradicted evidence is to the contrary.

In our opinion there is evidence of such intentional concealment in the record. Appellees Perrenot and Mauldin were not parties to Cause No. 93597 in the 14th District Court in which Stinnette and Light obtained a judgment against the Sanders for their interest in the leasehold and in which suit and judgment Stack was also a party. Neither had their title been involved or questioned in Cause No. 95715–E until appellants filed their cross action and other pleadings therein some months before judgment was entered. There was evidence that appellants knew that Perrenot and the Mauldins had brought in the first well on the lease in accordance with the contract of April 17, 1931 and knew that by reason of these facts they claimed an interest in the lease under such contract. The interest of Perrenot and Mauldins in the lease was not questioned until such cross action and pleadings were filed. In spite of these facts, Perrenot and Mauldin were not notified by service of citation or in any other manner, of the cross action and other pleadings of appellants claiming and asking judgment for title to the entire leasehold interest in question to the exclusion of appellees. The only setting of the case was of the motion to discharge the receiver and no notice was given to appellees of that setting. The names of

Perrenot and the Mauldins were not mentioned in the judgment which found title to the entire leasehold to be in appellants, and the only reference to such appellees was as "any of the parties to this cause" or "all parties hereto."

The failure to give notice to appellees of the hearing which had been set for September 19, 1936 certainly concealed the proceedings from them. Even in the absence of other facts and circumstances which are in evidence and tend to indicate an intention to conceal, one must be presumed to have intended the natural consequences of his acts. Norris v. Stoneham, 46 S.W. (2d) 363.

Appellants also strongly contend that the finding of the jury that the judgment of September 19, 1936 in Cause No. 95715–E was the result of an agreement between Mrs. Stinnette, Mrs. Light, Producers Investment Corporation, Levy and Evans and their attorneys is not supported by but is contrary to the uncontradicted evidence in the case.

In this connection, it appears that on August 25, 1936 Mrs. Stinnette joined by other intervenors, filed a motion to discharge Joseph M. Weaver as receiver and alleged:

" * * * that all matters in controversy between the parties to this suit (No. 95715) have now been settled, and adjusted. That the defendant, Producers Investment Corporation has settled all of its differences with the plaintiff, Mrs. Virginia Sanders, and has purchased all of the interest of the said Mrs. Virginia Sanders in and to said property above described. That these intervenors and cross plaintiffs have also obtained an agreement from the Producers Investment Corporation for the cancellation of that certain contract with said Producers Investment Corporation, dated on or about the 22nd day of June, 1932, a copy of which is marked 'Exhibit A' and attached to the Plea of Intervention and cross action filed in this cause by these intervenors and cross plaintiffs, reference to which is here made for all purposes. That all debts have now been paid by the Re-

ceiver, or else the Receiver has on hand sufficient moneys with which to pay the same, and your intervenors and cross plaintiffs further show that there is now sufficient moneys in the hands of said Receiver as they are informed and believe, with which to adjust and settle any balance owed by said Producers Investment Corporation to these intervenors and cross plaintiffs, and to the intervenors and cross plaintiffs Leonard M. Levy and Wm. L. Evans. That as above alleged all matters at issue between the parties to this cause, have now been adjusted or else agreements reached to adjust the same, all debts have been paid or else sufficient moneys are in the hands of the receiver with which to pay the same."

On the same day that the above motion was filed, it was presented to the court and hearing thereon was set for September 19, 1936. On such hearing date the following judgment complained of and set aside by the judgment in the instant suit was entered:

"No. 95715–E

Mrs. Virginia Sanders, et al v. J. E. Stack et al.

In the District Court, Dallas County, Texas.

101st Judicial District.

"Court in session this September 19th, 1936

"This Cause having been regularly set down for trial, came on to be heard this the 19th day of September, 1936, and thereupon came all parties hereto, in person and by and through their attorneys, and announced ready for trial. A jury having been waived, all matters, both of fact and of law, were submitted to the court, and the court, having heard the pleadings, evidence and argument of counsel, and being advised in the premises finds:

"1. That the defendants and intervenors, Mrs. J. M. Stinnette, a widow, Mrs. George E. Light, Leonard M. Levy and William L. Evans, are the owners of an undivided two-thirds (⅔) interest of that certain oil and gas min-

ing lease (describing the 15 acre lease here involved) as set forth in their amended original cross action and pleas of intervention filed herein, and that certain judgment rendered in Cause No. 93597–E, styled Mrs. J. M. Stinnette, et al vs. Virginia Sanders, et al, in the 14th Judicial District Court of Dallas County, Texas, a certified copy of which is recorded in Vol. 143, pages 259, et seq. of the deed records of Gregg County, Texas, free and clear of all claims of any of the other parties hereto, and that said undivided interest is owned as follows, to-wit:

Mrs. J. M. Stinnette owns ⅜ths of said interest;

Mrs. George E. Light owns ⅜ths of said interest;

Leonard M. Levy owns ⅛th of said undivided interest;

William L. Evans owns ⅛th of said undivided interest.

"2. That the undivided one-third (⅓) interest in said oil and gas lease above described, heretofore owned by Mrs. Virginia Sanders, has been acquired by the Producers Investment Corporation, and that said one-third undivided interest in said oil and gas mining lease is now owned by the said Producers Investment Corporation free and clear of the claims of any of the other parties hereto.

"3. That that certain assignment dated July 25, 1931, recorded in Vol. 96, page 445, of the deed records of Gregg County, Texas, executed by J. E. Stack to Charles Pettit, and assigned by said Charles Pettit to Producers Investment Corporation, being File No. 22082; and that certain assignment of date August 20, 1931, filed for record August 25, 1931, being File No. 23661, and recorded in Vol. —— page —— of the deed records of Gregg County, Texas, executed by J. E. Stack to the Producers Investment Corporation, should be set aside and held for naught insofar as the same purport to cover or affect the undivided interests owned by Mrs. J. M. Stinnette, Mrs. George

E. Light, Leonard M. Levy and William L. Evans.

"And, that that certain contract of date June 22, 1932, filed for record March 3, 1933, and recorded in Vol. 143, page 255, of the deed records of Gregg County, Texas, made and entered into between the Producers Investment Corporation and Mrs. J. M. Stinnette, a widow, and Mrs. George E. Light, joined pro forma by her husband, George E. Light, should be set aside, cancelled and held for naught.

"4. That there is no further necessity for a receiver, and that the possession of the above described oil and gas lease and leasehold estate in and to the premises above described, and the moneys arising therefrom in the possession of or to come into the possession of the receiver, should be delivered to the above named owners and their titles thereto quieted in accordance with the terms of this decree.

"It is, therefore, ordered and adjudged that Mrs. J. M. Stinnette, a widow, be decreed to be vested with an undivided one-fourth (¼) interest in and to the entire oil and gas lease and leasehold estate above described insofar as the same covers the property and premises hereinabove described; that Mrs. George E. Light be decreed to be vested with an undivided interest of ¼ in and to the entire oil and gas lease and leasehold estate above described insofar as the same covers the property and premises hereinabove described, to be her own sole and separate property and estate; that Leonard M. Levy be decreed to be vested with an undivided one-twelfth (1/12) interest in and to the entire oil and gas lease and leasehold estate above described insofar as the same covers the property and premises hereinabove described; that William L. Evans be decreed to be vested with an undivided one-twelfth (1/12) interest in and to the entire oil and gas lease and leasehold estate above described insofar as the same covers the property and premises hereinabove described; and that the Producers Investment Corpo-

ration be decreed to be vested with a one-third interest in and to the entire oil and gas lease and leasehold estate above described insofar as the same covers the property and premises hereinabove described; and that the title of the above named parties to the respective interests vested in them be and the same is hereby quieted as against any of the other parties to this cause.

"It is further ordered, adjudged and decreed that those two certain assignments executed by J. E. Stack, as hereinabove set out, be and the same are hereby decreed to be set aside and cancelled insofar as the same purport to cover or affect the right, title and interests of Mrs. J. M. Stinnette, Mrs. George Light, Leonard M. Levy and William L. Evans; and that that certain contract above described, made and entered into between the Producers Investment Corporation and Mrs. J. M. Stinnette, a widow, and Mrs. George E. Light, joined pro forma by her husband, George E. Light, be decreed to be set aside, cancelled and held for naught.

"It is further ordered, adjudged and decreed that that certain assignment of oil payment, dated June 30th, 1932 and recorded in Vol. 135, page 421 of the Deed Records of Gregg County, Texas, executed by Mrs. J. M. Stinnette, to McGehee & Company and thereafter assigned to the Producers Investment Corporation, and that certain assignment of oil payment dated October 1st, 1932, recorded in Vol. 135, page 422 of the Deed Records of Gregg County, Texas, executed by Mrs. George E. Light and husband, Geo. E. Light, to McGehee & Company and thereafter assigned to Producers Investment Corporation, be, and the same, are hereby set aside, cancelled and held for naught.

"It is further ordered, adjudged and decreed by the court that there is due to Mrs. J. M. Stinnette the sum of $561.03, Mrs. George E. Light the sum of $561.03, Leonard M. Levy the sum of $187.01 and William L. Evans the sum of $187.01 out of the funds now held by the receiver and being the total amount that the receiver had on hand on September 1st 1936, and the receiver is hereby ordered to make payment to the above parties of such amounts; that from and after the payment has been made to the above parties of the above amounts, then and thereafter any amounts remaining in the hands of the receiver shall be owned in the following proportions, to-wit:

Mrs. J. M. Stinnette one-fourth

Mrs. George E. Light one-fourth

Leonard M. Levy one-twelfth

William L. Evans one-twelfth

Producers Investment Corporation one-third.

and that the receiver is authorized, empowered and directed to make payment to such parties of the proportionate amounts due and owing to each of them out of the funds remaining on hand after the payment of the specific amounts above set forth, and all costs, expenses and fees allowed on final accounting.

"It further appearing to the court that all matters of accounting between Producers Investment Corporation, Mrs. J. M. Stinnette, Mrs. George E. Light, Leonard M. Levy and William L. Evans have been adjusted and finally settled, as hereinabove set forth and decreed,

"It is, therefore, ordered, adjudged and decreed that all claims of any of such parties over and against any and all, or either, or the remaining parties be, in all things denied, and that from and after this day that all funds that accrue to said leasehold estate shall be paid to the parties hereto according to the following interest, to-wit:

Mrs. J. M. Stinnette one-fourth

Mrs. George E. Light one-fourth

Leonard M. Levy one-twelfth

William L. Evans one-twelfth

Producers Investment Corporation one-third

"And it appearing that there is no further necessity for a receiver, it is hereby ordered that Joseph M. Weaver

heretofore appointed and qualified as receiver herein, be and he is hereby discharged, to be effective upon the approval of his final report. Said receiver is hereby ordered to file his final report and account herein for action thereon by the court.

"Receiver is further ordered to turn over the properties above described to the American Liberty Oil Company for operation, as hereinafter provided, on or before October 1st, 1936.

"It is further ordered and adjudged that all relief herein sought by any of the parties to this cause, except as herein decreed, be denied."

■ The judge before whom the above judgment was taken testified that no trial was had, no jury was called, and that no evidence was introduced; that he relied upon the lawyers who told him that all the necessary parties were in the case and that he signed the judgment without reading it. Other witnesses testified to the same effect. The docket sheet did not indicate a trial. There was evidence that neither the clerk of the court or the court reporter were present and that no record could be found reporting any hearing of the case. In our opinion, the evidence fully supports the jury finding that the judgment was the result of an agreement by and between appellants.

It is contended in appellants' tenth point that since the contract upon which appellees sued required Perrenot and the Mauldins as a condition precedent to the vesting in them of any interest in the lease involved in this suit, to complete the drilling of a well thereon without cost or expense to the Sanders, and the undisputed evidence shows conclusively that they did not do so, the court erred in awarding appellees' title to the lease involved in this suit.

■■ The contract of April 17, 1931 did require Perrenot and the Mauldins as a condition precedent to the vesting of title in them to the lease to complete the drilling of a well thereon "without cost or expense" to the Sanders. We cannot agree that the ratification of the sale of the first oil payment by the Sanders constituted or amounted to "cost and expense" to them. The first oil payment was by the terms of the instrument to be paid out of 7/32nds of the first oil and if Stack had completed the oil well in compliance with his contract, his interest alone would have been burdened with its payment. Since Stack did not complete the well but it was completed by Perrenot and the Mauldins, their interest in the lease was burdened with the payment. To hold otherwise would be to place an interpretation on the oil payment contract and the ratification agreement which would have made impossible performance of the contracts of April 17th and April 18th, 1931 by either Stack or Perrenot and the Mauldins. Such an interpretation is not only frowned upon by the law but would do violence to the very terms of the written instruments themselves. In the ratification agreement of July 27, 1931, it was specifically provided that the Sanders should assume no responsibility for the drilling or completion of the well, nor for the performance by any other parties, including Stack, Perrenot and the Mauldins, of any of their obligations to complete the well in accordance with the original contracts. The Sanders also therein ratified and approved in all respects the above mentioned contracts.

Appellants also contend that it was necessary for Mrs. Sanders to ratify a second $40,000 oil payment and that the execution of this second ratification was even more expensive than the first in that in the second assignment Stack agreed that should he fail to comply with the terms of the contract of April 17, 1931, and April 18, 1931, that Producers Investment Corporation should have the right to take over the operation and management of the lease and that all of the oil produced from the lease should be applied to such second $40,000 payment until it was fully satisfied. Appellants particularly urge that prior to her ratification of the second oil payment, Mrs. Sanders was entitled to be paid $15,000 out of 1/4th of the first proceeds of oil which might be produced from the well; that by ratifying such second oil payment to Producers Investment Corporation, Mrs. Sanders gave up this right and agreed that if Stack should fail to carry out his agreement with Producers, Producers should have the right to

take all of the production from the well and apply it to such $40,000 and that Mrs. Sanders could not get anything from the well until Producers Investment Corporation had been paid that oil payment in full.

The exact language of the provision of the oil payment referred to by appellants is as follows:

"2. * * * the said Producers Investment Corporation shall have the right to take over the operation and management of said lease and to operate the same, and sell the oil produced therefrom and apply the same on said $40,000.00 * * *"

until same was paid. This provision when considered alone is susceptible to the interpretation made by appellants although the word "all" is not used. The provision, however, is general in its nature and in our opinion, is controlled by the specific and more restrictive provision for the payment of such $40,000 which is as follows:

"* * * but that said sum shall be due and payable to said Producers Investment Corporation only out of $7/32$nds of the first oil produced, saved and sold from said land."

It is our opinion that the "$7/32$nds of the first oil produced" out of which such payment was to be made referred again to Stack's $1/4$th interest in the lease if he completed the well according to contract, and if he did not complete the well, the payment would be taken from the interest of Mauldin and Perrenot if they complied with their contract and not from the "$1/4$th of the first proceeds" which was burdened with the $15,000 payment to Mrs. Sanders.

If, however, appellants should be correct in their contention that the execution of the ratification agreements were "expense" to Mrs. Sanders in that they delayed the drilling of the additional wells, or delayed the payment of the $15,000, we are of the opinion that appellants would not be benefitted thereby. The evidence shows that the suit by Stinnette and Light against Mrs. Sanders for a $2/3$rds interest in the lease which was filed on June 1, 1931 while the first well was being drilled made it exceedingly difficult for money to be secured to drill the well. Under such circumstances, Mrs. Sanders and those claiming under her could not be heard to complain if, in order to continue the drilling of the first well, she was required to ratify an instrument which made her position less desirable than it was under the original contract of April 17, 1931, and that it was, therefore, to that extent an expense to her. The failure of the title to be as represented in her contract with Mauldin, Perrenot and the resulting inconveniences to them, presented a fact situation which was a consideration for the concession or "expense" made by her in such ratification agreements. Mrs. Light, Mrs. Stinnette and those claiming under them could not complain under this theory of the case because they had knowledge of all these facts, of the work and acts done by Perrenot and the Mauldins in drilling the well and with this knowledge permitted the well to be drilled to completion without any complaint or objection and accepted the benefits therefrom.

In appellants' eleventh point it is urged that where appellees themselves introduced in evidence three written instruments all of which instruments bore approximately the same date and were, as shown by their terms, executed and delivered all as part of one transaction, and where the provisions of said three instruments, taken together, clearly provided that J. E. Stack, as owner of the lease involved in this suit, sold and assigned to Producers Investment Corporation $7/32$nds of the first oil to be produced from said lease, until Producers should receive therefrom the sum of $40,000; that the consideration for said sale was the sum of $10,000, to be paid by Producers on all outstanding bills for labor and material used in completing the Stack No. 1 Doby well, and that, if there should be any balance left over after payment of all such bills, said balance should be paid to J. M. Stack, and said assignment and collateral agreement for the payment of said $10,000 were specifically approved by Mr. and Mrs. Sanders, Mr. and Mrs. Mauldin, F. A. Perrenot and J. E. Stack, all parol negotiations which may have taken place between the parties to said written instruments prior to their execution by said parties, were merged

into the written agreement and the Court committed reversible error by admitting into evidence, over the objection of appellants, timely made, testimony by B. H. Mauldin, witness for appellees, that a verbal agreement, prior in point of time to the written agreement, and at variance with it, was made, entered into and carried out by the parties.

The three written instruments referred to in appellants' eleventh point were the assignment of the $40,000 oil payment from J. E. Stack to Producers Investment Corporation, dated August 20, 1931 and acknowledged August 24, 1931; the ratification by the Sanders, Perrenot and the Mauldins of Stack's assignment to Producers which is dated August 20, 1931, and acknowledged by all parties on August 22, 1931; and a contract between Producers Investment Corporation and J. E. Stack dated August 24, 1931, and acknowledged August 25, 1931. The last mentioned contract recited that Stack needed $10,000 to bring in and equip the first well in question; that in order to obtain it he had on that day executed an assignment to Producers of $40,000 to be paid out of 7/32nds of the first oil to be produced therefrom, which $10,000 was to be paid by Producers first by paying all of the outstanding bills for labor and material used in drilling and equipping the well and in the purchase of such additional material and employment of such additional labor as was reasonably required to properly bring in the well and connect it with a pipe line. It was further provided in the contract that the entire amount of $10,000 should be retained by the Producers Investment Corporation and paid out by it in payment of such bills for labor and material upon receipted vouchers or upon proper order satisfactory to and approved by the said Corporation and signed by F. A. Perrenot and J. E. Stack. It was further provided in such contract that the balance, if any, of such $10,000 after payment of all bills for labor and material required to complete the well and connect it with the pipe line should be paid to J. E. Stack.

The testimony of Mauldin, complained of on the ground that it was at variance with the above mentioned written instruments, was to the effect that Stack had stated to Perrenot and the Mauldins and others that he had abandoned the well and would make no further effort to complete it; that Perrenot and the Mauldins could use the rig for the purpose of completing the well and that he should receive the balance remaining of the $10,000 consideration for the sale of the second oil payment after the payment of all bills which balance was estimated to be approximately $2,000 and that such amount would be a final adjustment of all accounts with him.

■ It is first to be noted that appellants' eleventh point assumes title to the 15 acre leasehold was conveyed to Stack by the ratification of the first oil payment and that Stack owned the lease. As heretofore held, the instrument in question did not convey title to Stack but only ratified the oil payment and was by its terms subject to the Mauldin-Perrenot contract of April 17, 1931. At the time of the execution of the three instruments referred to in appellants' eleventh point, Stack still had the burden of completing the first oil well to acquire any title under his contract of April 18, 1931. Evidence to the effect that he abandoned the drilling of the well was therefore admissible. An oral agreement with Perrenot and the Mauldins prior to or in connection with the three written instruments referred to by which Stack agreed to abandon the well, to permit Perrenot and the Mauldins to continue the use of the rig until the well was completed and for him to receive the $2,000 balance remaining of the $10,000 consideration for the sale of the oil payment after all bills had been taken care of, was not at variance and in conflict with the three written instruments but tended rather to explain them. Parol evidence has been held admissible to show intent of the parties in the execution and delivery of a written instrument, where intention is a point in issue apart from the legal effect of the written recitations. Universal Credit Co. v. Gasow-Howard Motor Co., Tex.Civ.App., 73 S.W.2d 909. It has also been held that the delivery of a note as between immediate parties and as regards a remote party other than a holder in due course, may be shown to have been for a special purpose and that

parol evidence is admissible upon that issue. Kimball-Krough Pump Co. v. Judd, Tex.Civ.App., 88 S.W.2d 579, also see Mauritz v. Bell, Tex.Civ.App., 81 S.W.2d 730 (Err.Ref.); Renfro v. Renfro, 80 S.W. 2d 348; Roddy v. Citizens' State Bank of Copeville, 11 S.W.2d 652. See also the following statement in 17 Tex.Jur., page 826:

"It is proper to admit testimony which merely shows the inducements leading to the execution of a writing or explains the circumstances in which it was executed. And an independent parol agreement which is shown to have been entered into as an inducement to the making of a written contract may be proved and enforced although it is not referred to in writing. So, a verbal promise by one of the parties at the time of making a written contract may be given in evidence; * * *"

The court did not err in admitting testimony of such oral agreement. Appellants' eleventh point is overruled.

It is contended in appellants' fourteenth point that the finding of the jury in answer to special issue No. 30–A that at the time the first well was brought in on the lease here involved, Stack, Perrenot and Dorrity were not acting as partners in the drilling of said well is not supported by, but is contrary to, the uncontradicted evidence in this case.

M. B. Dorrity himself testified that about April 1, 1931, he went into an oil venture with Stack pertaining to the lease in question. He testified that he assisted Stack to get both a derrick and a drilling rig on the lease; that Stack paid for the derrick and gave a mortgage for the drilling rig and that he, Dorrity, signed as one of the witnesses to the mortgage; that on June 19, 1931, the agreement between them for a partnership, which was introduced in evidence, was reduced to writing and signed by Stack, Perrenot and Dorrity. The agreement provided, in effect, that it was the purpose of the three individuals named to engage in the business of oil production, refining, drilling and various other activities pertaining to the oil industry. It was provided that all leases, contracts, royalties,

machinery and every piece of holdings whatsoever, including the 15 acre lease in question, and other leases and an oil refinery located in Caddo Parish, Louisiana, should be considered partnership property and be owned jointly by Stack, Perrenot and Dorrity. It was stated to be the further purpose of the contract to convey in proper manner and legal way prescribed by law to each of said members of the partnership a ⅓rd interest in and to all such oil property including leases, royalties, drilling rigs, pipe lines, refineries or any other assets then used in connection with the oil business and owned by any member of the partnership. Each of the parties bound and obligated themselves to make proper legal transfer so as to carry out and comply fully with the agreement to so legally transfer the title. It was further provided that a corporation should be formed with each individual to the partnership agreement owning ⅓rd of the stock thereof and the parties bound themselves to transfer to the contemplated corporation all of the property and assets referred to as partnership property.

The corporation mentioned in the agreement was never formed but there was considerable evidence to the effect that the partnership agreement was put into practical operation by the partners. Most of the testimony to this effect was by Dorrity but several disinterested witnesses testified to facts which tended to corroborate the statements made by him. The question to be determined is not whether there was sufficient evidence to have supported a finding that Stack, Perrenot and Dorrity were acting as partners in the operation of the lease in question at the time the first well was brought in but whether there is sufficient evidence to support the jury finding to the contrary.

The above mentioned contract was not effective within itself to form a partnership. It was not a contract where nothing remained to be done by any of the parties to make the partnership operative. The contract provided for the conveyance to the partnership of the interest of Stack in and to the lease in question, and for the conveyance to the partnership of the refin-

ery owned by Dorrity as well as all leases, royalties, contracts, machinery and holdings of whatsoever kind owned by all three parties. No conveyance was ever made of any of this property. When Stack made what is known as an "Organization Report" which was required to be made to the Texas Railroad Commission, showing whether he was operating as a corporation, partnership, or individual, he stated under oath that he was operating as an individual. This report was made and filed with the Railroad Commission on July 1, 1931 which was 12 days after the date of the above described partnership contract. The agreement made by Stack with Perrenot and the Mauldins on or about August 22, 1931, in which he permitted them to continue the use of the rig for the completion of the well, was an individual transaction on the part of Stack and is a circumstance inconsistent with a partnership relation with Perrenot. It was also shown that Dorrity received a $500 commission out of the $10,-000 consideration for the second oil payment. This fact is likewise inconsistent with the idea of a partnership with Perrenot. In our opinion, the finding of the jury that at the time the first well was brought in, Stack, Perrenot and Dorrity were not acting as partners in drilling the well is amply supported by the evidence. 10 Tex.Jur., Page 25, Sec. 11, Contracts; Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061; Buzard v. McAnulty, 77 Tex. 438, 14 S.W. 138; Eagle Drug Co. v. White, Tex. Civ.App., 182 S.W. 378; Chancellor v. Brachman, Tex.Civ.App., 41 S.W.2d 1015; Bell v. State, 132 Tex.Cr.R. 81, 104 S.W. 2d 511.

B. M. Dorrity has requested leave to file his plea of Amicus Curiae on this appeal. He urges that he was a necessary and indispensable party to the proper disposition of the present litigation; that it was necessary to determine whether he acquired an interest in the property by virtue of the partnership agreement of June 19, 1931, if so, to what extent and whether he lost such interest after its acquisition. He urges that the results of this litigation as to all of the parties hereto other than Dorrity, were necessarily and vitally affected by the determination of his interest in the lease in that the rights of each of them would be effected thereby.

On the trial of this cause in the fall of 1948, the jury was unable to agree upon all of the issues submitted but did answer certain issues concerning Dorrity and his interest in the lease and based upon the answer to these issues, the court, on December 3, 1948, entered an interlocutory judgment against Dorrity. Upon such trial it was found by the jury that Stack commenced and completed the well in question by his own efforts acording to contract and brought it in as a producer and further found that Dorrity was a partner with Stack and Perrenot at the time the first well was brought in but that he abandoned his claim and participated in a settlement made with Stack, intending to be bound thereby as to the interest claimed by him. Dorrity insists that the trial court erroneously considered him to be before the court on the last trial by reason of the entry of the so-called interlocutory judgment entered in this action when all issues as between Dorrity and other parties were inseparable and undivisable. He contends that he was not properly before the court on the last trial and that the action of the court in entering final judgment against him at such trial was fundamental error and that a reversal of this case is required.

■ The interlocutory judgment entered against Dorrity on the trial in 1948 when the jury failed to agree upon all the issues submitted, did not become final until March 4, 1950, when final judgment was entered against all parties to the suit. Dorrity made no attack on the judgment by motion to set it aside or on appeal, although he was present at the trial and testified as a witness, and knew or should have known about the judgment. His remedy was by appeal. He cannot be heard to complain of the judgment at this time by Amicus Curiae brief. Miller-Link Lumber Co. v. Stephenson, Tex.Civ.App., 265 S.W. 215, affirmed Tex.Com.App., 277 S.W. 1039; Moore v. Dilworth, 142 Tex. 538, 179 S.W. 2d 940.

■ This suit presents a direct attack upon the judgment of September 19, 1936, and to set aside the judgment, it is only necessary to show that it is voidable, that the case is a proper one for equitable relief and that there is no adequate remedy at law. 25 Tex.Jur., page 625; Garza v. Kenedy, Tex.Civ.App., 291 S.W. 615; Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641.

■ The judgment was at least voidable. In the first place it was an agreed judgment and was, therefore, binding only upon the parties to the agreement and was not binding upon appellees who were not parties to such agreement. Mauldin v. American Liberty Pipe Line Co., supra; Edwards v. Gifford, 137 Tex. 559, 155 S.W. 2d 786.

■ The judgment was voidable for the further reason that it was entered without notice to appellees with the intent by appellants to conceal the entry of the judgment after an agreement between all parties as set out in the order of December 12, 1931, which provided in effect that the rights, titles, claims and interests of the parties therein be held in abeyance until a future time. Appellees were entitled to be notified of the hearing set for September 19, 1936. They have shown that they were prevented from attending such hearing and from asserting their rights and claims of title to the lease in question by reason of the action of appellants in concealing such proceedings. They have shown that their failure to appear when judgment was entered on that date was not due to their negligence. The action of appellants amounted to extrinsic or collateral fraud and had the direct effect of preventing appellees from presenting their claim of title to the court. Under such circumstances, appellees were entitled to have the judgment set aside if they could show merit in their claim of title. McAfee v. Jeter & Townsend, Tex. Civ.App., 147 S.W.2d 884; Pearl Assur. Co. Ltd. v. Williams, Tex.Civ.App., 167 S.W.2d 808; Cotten v. Stanford, Tex.Civ. App., 169 S.W.2d 489; Mills v. Baird, Tex. Civ.App., 147 S.W.2d 312; Peaslee Gaulbert Corp. v. Hughes, Tex.Civ.App., 79 S. W.2d 149; Jones v. Wootton, Tex.Com. App., 228 S.W. 142; 17 Tex.Jur., page 28;

49 C.J.S., Judgments, § 372, pages 738, 739; 31 Am.Jur. pages 230, 232. This would be true even if the pleadings on file at the time of the order of December 12, 1931 had raised the issue of title, which they did not.

■ Appellees have shown a meritorious claim of title to the 15 acre lease. It is shown that they were not guilty of negligence, laches, or lack of diligence in presenting their claim and they have no legal remedy. They are entitled to the equitable relief sought.

We find no reversible error in any of the points presented.

The judgment of the trial court is affirmed.

## On Motion for Rehearing.

Appellents, Stinnette and Light and those claiming under them, particularly urge on motion for rehearing that we erred in affirming that part of the judgment which denied them recovery on their cross action against Appellant, Producers Investment Corporation. The facts upon which the cross action is based as alleged in the pleadings of the Stinnette-Light parties are substantially as follows: That the judgment in the Stinnette-Light-Sanders case entered on October 8, 1932, awarded title to the lease here involved, one-third each to Mrs. Stinnette, Mrs. Light and Mrs. Sanders with the provision that as between such parties the one-third interest awarded to Mrs. Sanders should alone be chargeable with the rights, title, interest or liens, if any, of Perrenot and the Mauldins, Pettit and Producers Investment Corporation or the assignees of any such parties arising under and by virtue of the contract of April 17, 1931, and that the two-thirds interest vested in Mrs. Stinnette and Mrs. Light should be free and clear of any such rights, title, interests or liens; that Mrs. Stinnette and Mrs. Light were granted a lien against the interest of Mrs. Sanders to secure them against loss of any part of the two-thirds interest recovered by and vested in them; that Producers Investment Corporation purchased the interest of Mrs. Sanders prior to the judgment of September 19, 1936, with full knowledge and notice of the terms and

provisions of the October 8, 1932 judgment and that Producers Investment Corporation is bound thereby. The judgment of September 19, 1936 adjudged title to the lease one-third each to Mrs. Stinnette, and those holding under her, Mrs. Light and those holding under her, and to Producers Investment Corporation, the holder of Mrs. Sanders' interest, and denied the Mauldin-Perrenot parties any right, title or interest in the lease. Such judgement did not, as entered, conflict with the 1932 judgment. But if the 1936 judgment is by the terms of the judgment in the instant case set aside only to the extent of granting the Mauldin-Perrenot parties title to the entire lease with the right to retain one-half the net profits from the operation thereof, and leaving the parties to the 1936 judgment only their proportional share in the remaining one-half of the net profits, then there is a conflict. The prayer in the cross action of the Stinnette-Light parties against Producers Investment Corporation was as follows:

"That should for any reason said judgment of September 19, 1936, in said cause No. 95,715 be set aside or altered in any part, that portion of it which quieted the title in said Producers Investment Corporation to an undivided one-third interest in said lease against any claim on the part of Mrs. Stinnette, Mrs. Light and William L. Evans should also be set aside, and, by reason of the premises, should plaintiffs or any defendant in this cause be decreed by this Honorable Court to be entitled to any interest whatever in and to the leasehold premises involved in this suit by reason of any contract or agreement made with reference thereto by Mrs. Virginia Sanders and her husband, these defendants are entitled to have such recovery on the part of plaintiffs or any such other defendant satisfied in full out of the interest in said leasehold premises now owned or claimed by said Producers Investment Corporation before any such recovery can be allowed against the interest owned by these defendants in and to said leasehold premises."

The prayer of Producers Investment Corporation in its answer was:

" * * * that the title of this defendant in and to an undivided one-third of the leasehold estate in the Doby Lease, together with a like interest in personal property situated on said lease and used in connection therewith be cleared and freed of and from all of the claims asserted in this cause by plaintiffs, and, in the alternative and in any event, that the right to its oil payments and improvements be recognized and preserved, and that this defendant be granted such other and further relief, both general and special, in law and in equity, to which it may be entitled."

No issue was submitted or requested to be submitted to the jury with reference to such cross action. The judgment in the instant case upon which this appeal is based, purported to set aside the judgment of September 19, 1936 only as to appellees herein, the Mauldin and Perrenot parties, and awarded them the entire title to the lease with the right to retain one-half the net profits from the operation thereof. It further provided:

"It is ordered, adjudged and decreed by the court that the parties hereto, to-wit, Mrs. J. M. Stinnette, Producers Investment Corporation, Leonard M. Levy, William L. Evans, Mrs. George E. Light and George E. Light, who participated in the agreement resulting in and evidenced by the aforementioned and so-called 'judgment' of September 19, 1936, in said Cause No. 95,715-E and the other party hereto, to-wit: George E. Light, Jr., who was privy to such agreement, are all legally bound and hereby are decreed to be legally bound by same, to the extent of their division and allocation as between themselves and as hereinafter shown, of the undivided claims, rights, or interests they were entitled to in and to that certain right to demand, collect and receive of and from the owners of said fifteen acre lease a sum equal to one-half of the net profits from pro-

·duction of wells on said fifteen acre lease * * * That is, Mrs. J. M. Stinnette was entitled to a one-fourth; Mrs. George E. Light a one-fourth; Leonard M. Levy a one-twelfth; William L. Evans a one-twelfth; and Producers Investment Corporation a ·one-third of such right to demand, ·collect and receive of and from the ·owners of said fifteen acre lease said sum of money equal to one-half of the net profits from the production from the wells on said land, and own such money as their own property."

It is the contention of the Stinnette-Light parties that if the judgment of September 19, 1936 is invalid as against appellees (Mauldin-Perrenot parties) then it is invalid for all purposes; it is urged that the ·essence of such judgment was its award of legal title one-third each to Mrs. Stinnette, Mrs. Light and Mrs. Sanders; or their respective assigns; that if such award is set ·aside and legal title is granted to entirely ·different claimants (the Mauldin Perrenot parties) the effect is to set aside the entire judgment, and the title to the lease is then in the same status that it was prior to the ·rendition of such judgment; that the parties thereto are each entitled to the same relative interest in the lease in question that they had prior to the rendition of such judgment, as determined by the judgment ·rendered on August 8, 1932 by the 14th District Court of Dallas County, in Cause No. 93,597; that the provision of the 1932 judgment to the effect that the Stinnette-Light two-thirds interest in the lease was free of, and that the Sanders one-third interest was charged with, all rights, title, interest or liens which arouse under or by reason of the Sanders-Mauldin-Perrenot agreement of April 17, 1931, was in substance a covenant running with the land ·and as such, is still binding on appellant, Producers Investment Corporation, and that appellants, the Stinnette and Light parties, are entitled to its benefits.

▀▀▀ The contention of the Stinnette-Light parties concerning the cross action ·against Producers Investment Corporation is well taken. The wording of the judg-

ment appealed from seems to indicate an intention to set aside the judgment of September 19, 1936 only as to the Mauldin-Perrenot parties and to otherwise leave such judgment in full force and effect. Under our practice, a judgment may be set aside in part in a proper case. The rule in such cases as stated in 25 Tex.Jur., page 581, 582 is that "a judgment may be void in part and stand as to the remainder where the valid portion is not so dependent on the invalid as to fall with it."

After careful consideration of the two judgments, however, we feel that their provisions as a whole are so conflicting and inconsistent one with the other that the effect of the judgment in the instant case is to entirely set aside the 1936 judgment. The 1936 judgment awarded title to the lease one-third each in Mrs. Stinnette, Mrs. Light, their assigns and Producers Investment Corporation, which had acquired Mrs. Sanders' one-third interest. The Mauldin-Perrenot parties were denied any title or interest therein. The judgment in the instant case denies the Stinnette-Light parties and Producers Investment Corporation any title to the lease and awards them only a one-half interest in the net profits therefrom in which they are to participate in the same proportion that they were to participate in the ownership of the title to the lease as provided in their agreed judgment of 1936. All of the title to the lease and the remaining one-half of the net profits are awarded to the Mauldin-Perrenot parties. The essence of the 1936 judgment was the award of the title to and possession of the lease in question to appellants on the theory that the Mauldins and Perrenots had not complied with the contract of April 17, 1931. The essence of the judgment appealed from is to grant title to the Mauldins and Perrenot on the theory that they did comply with such contract and the effect is to set aside the entire 1936 judgment.

▀▀▀ The 1936 judgment granted Producers Investment Corporation title to a one-third interest in the lease free of all claims by any other parties to the cause, including the Stinnette-Light parties, and as entered was not in conflict with the 1932

judgment because the 1936 judgment found that the Mauldin-Perrenot parties had no title or interest in the lease. There is a conflict, however, if that portion of the 1936 judgment denying the Mauldin and Perrenot parties any interest in the lease is set aside and such parties are awarded title to the lease and the judgment is deemed and held to remain in full force and effect only to the extent of the division of one-half of the net profits in the lease between appellants. In such case the Stinnette-Light parties have suffered the loss of their title by reason of Mrs. Sanders' contract with Perrenot and the Mauldins and Mrs. Sanders' one-third interest is not required to protect them from such loss as provided in the 1932 judgment. In our opinion, the provisions of the 1936 judgment are interdependent and indivisible. That portion of such judgment which the trial court in this case correctly found to be invalid was so inseparably connected with the remaining portion that the latter cannot stand apart from the former. The effect of vacating or setting aside a judgment, generally speaking, is to place the parties in the same position that they occupied prior to its rendition. 25 Tex.Jur., page 183; Marmion v. Herrin Transp Co. Inc., Tex.Civ.App., 127 S.W.2d 558; Saunders v. Hornsby, Tex. Civ.App., 173 S.W.2d 795 (Err. Ref.). The status of the title to the lease in question prior to the entry of the judgment of September 19, 1936 was that Perrenot and the Mauldins had title thereto subject to their obligations under the contracts of April 17, July 27, and August 20, 1931, with the right to retain one-half of the net profits from the operation of the lease. Producers Investment Corporation was entitled to its two $40,000 oil payments to be paid out of the interest of Mauldin and Perrenot, and was the holder of Mrs. Sanders' interest in the lease. The relative interests of Mrs. Sanders, Mrs. Stinnette and Mrs. Light in the lease were adjudicated in the judgment of October 8, 1932 which held that when Mrs. Sanders first acquired title to the lease she held it in trust for herself, Mrs. Stinnette and Mrs. Light; that she was guilty of a breach of trust in entering into the contract of April 17, 1931 with Perrenot and the Mauldins and that whatever interest Mrs. Sanders retained in the lease or the proceeds therefrom after her contract with the Mauldins and Perrenot, was subject to a lien in favor of the two-thirds interest therein awarded to Mrs. Stinnette and Mrs. Light to secure them as far as possible against loss or damage to their interests caused by the willful act of Mrs. Sanders in breaching her trust duty. Producers Investment Corporation paid Mrs. Sanders $5,000 for her one-third interest in the lease and received a quit claim deed therefor. Such interest was acquired by them with full notice and knowledge of the existence of the judgment of October 8, 1932. Mrs. Sanders' one-third interest in the hands of Producers Investment Corporation was and is still subject to the 1932 judgment.

It is urged by appellant, Producers Investment Corporation, that the 1936 judgment was a contract between it and Mrs. Stinnette, et al; that the agreed judgment so entered is res adjudicata and that the parties are bound thereby. We cannot agree with this contention. The terms of the agreed judgment were interdependent. The judgment as a whole was indivisible and when it was set aside in part, the remaining portion also fell. To set aside that portion of the 1936 judgment awarding a two-thirds interest in the title to the Stinnette-Light parties and to grant the entire title to the Mauldin-Perrenot parties, leaving the Stinnette-Light parties with only a two-thirds interest in one-half of the net profits is not the contract agreed to by such parties in that judgment. The Stinnette-Light parties did agree that the one-third interest of Producers Investment Corporation be quieted "as against any of the parties" to such cause, but did not consent that the title of Producers be quieted as against them but not against the Mauldins and Perrenots. The 1936 judgment did not contemplate that the Sanders interest was to be free and clear of the lien placed against it by the 1932 judgment, except in the event that the two-thirds interest of the Stinnette-Light parties suffered no loss or damage by reason of the April 17, 1931 contract

221

of Mrs. Sanders with the Mauldins and Perrenots. Kulow v. Farmers Royalty Holding Co., 144 Tex. 312, 190 S.W.2d 60 affirming Tex.Civ.App., 186 S.W.2d 318. The agreed judgment was indivisible and when a part of it was set aside as invalid the remaining portion was of necessity also set aside.

■ We are likewise unable to agree with the contention of Producers Investment Corporation that the Stinnette-Light parties are estopped to assert their claimed lien against Mrs. Sanders' interest in the lease as provided for in the 1932 judgment. In 17 Tex.Jur., page 128, it is stated that:

"The idea or notion which inheres in the word 'estoppel' is that one who by his speech or conduct has induced another to act in a particular manner ought not to be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to such other."

■ Producers Investment Corporation has suffered no loss or injury by reason of the entry and setting aside of the 1936 judgment. Their status in relation to the Stinnette-Light parties since such judgment is set aside is the same that it was before the judgment was entered and in each instance, is determined by the provisions of the 1932 judgment. Since no loss or injury has been suffered by Producers by reason of the entry and setting aside of the 1936 judgment, there can be no estoppel.

That portion of the judgment of the trial court which denied the Stinnette-Light parties recovery under their cross action against Producers Investment Corporation is reversed and judgment is here rendered decreeing that the interest in that portion of the profits derived from the operation of the subject lease which Producers Investment Corporation acquired from Mrs. Sanders is in all things inferior and is subordinate to the rights of the Stinnette-Light parties to have their proportionate part of said profits made good to them out of the Sanders one-third portion thereof, insofar as such portion will suffice to do so. In all other respects, the judgment of the trial court is affirmed.